UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark WALDEMER, Defendant–
Appellant.

No. 94–2338.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1994.

Decided March 20, 1995.

Rehearing and Suggestion for Rehearing
In Banc Denied April 12, 1995.

Frank J. Marine, Dept. of Justice, Civil Div., Appellate Section, Stephen Kelly (argued), Dept. of Justice, Criminal Division/OCRS, Bond Edward Rhue, U.S. Dept. of Justice, Organized Crime and Racketeering Section, Washington, DC, for U.S.

James J. Gomric, Belleville, IL, John P. Long (argued), Troy, IL, Burton H. Shostak, Moline & Shostak, Clayton, MO, for Mark Waldemer.

Before BAUER and KANNE, Circuit Judges, and SKINNER, District Judge.*

KANNE, Circuit Judge.

Mark Waldemer was both an attorney and an elected legislative representative for the Brotherhood of Locomotive Engineers. Waldemer voluntarily testified before a federal grand jury investigating whether Waldemer's old law firm, Kassly, Bone, Becker, Dix, Tillery, & Reagan ("Kassly Law Firm"), or at-

---

* The Honorable Walter Jay Skinner, United States District Judge for Massachusetts, sitting by desig-

nation.

torney Stephen Tillery improperly paid Waldemer's union campaign and business expenses. Waldemer denied under oath that either had paid the expenses. Federal prosecutors subsequently found evidence indicating otherwise.

The government pursued Waldemer for lying to the grand jury about the payments the Kassly Law Firm made to him. A jury convicted Waldemer of making a false declaration to a federal grand jury. Waldemer appeals his conviction, alleging improper prosecutorial argument to the jury, improper jury instructions, and insufficiency of the evidence. We also examine as a threshold matter whether Waldemer's statements to the grand jury were material to the grand jury's investigation.

## I. Materiality of Waldemer's Statements

■ In order to convict a grand jury witness of perjury under 18 U.S.C. § 1623, the government must not only prove that the witness's testimony was false, it must also prove that the false testimony was material to a legitimate inquiry of the grand jury. 18 U.S.C. § 1623; *United States v. Gulley*, 992 F.2d 108, 112–13 (7th Cir.1993).

■ The focus of both parties in this appeal has been on the grand jury's investigation of possible improper payments from the Kassly Law Firm to Waldemer in violation of 29 U.S.C. § 481. In fact, the government predicated its theory of Waldemer's motivation to lie on this statute. However, this is not a criminal statute. Section 841 states that it is improper for an employer to pay any union campaign or business expenses. However, it does not provide criminal sanctions for violating its prohibitions. Under no set of facts, therefore, could the grand jury have indicted Waldemer, or anyone else, for violating this act. Consequently, any perjury relating to an investigation of this statute alone would not meet the materiality requirement of 18 U.S.C. § 1623.

The grand jury and trial transcripts, the indictment, and the government's brief, however, reveal the grand jury's broader scope. Former government prosecutor Lee Satterfield, who directed the grand jury investigation of Waldemer, told Waldemer when he testified before the grand jury that the grand jury was investigating him for mail fraud and Travel Act violations. Satterfield also testified at trial that the grand jury's scope included these statutes. The indictment also alleges that the grand jury had been investigating such possible crimes. And the government notes in footnote four of its brief that the grand jury's investigation included possible mail fraud and Travel Act crimes.

The government's theory for investigating mail fraud based on union campaign and business expense reimbursements from the Kassly Law Firm to Waldemer rests on Waldemer's deprivation of the Union of its intangible right to loyal, faithful, and honest services. Waldemer accepted the payments, the theory runs, in exchange for his promoting the Kassly Law Firm among union rank and file and his referring union workers to the Kassly Law Firm or Stephen Tillery for personal injury legal work. Waldemer's service to the union was not honest presumably because he did not disclose to the union his acceptance of the Kassly Law Firm payments.

■ One problem with the government's theory, however, is that Waldemer accepted the last of the reimbursements before Congress recognized the intangible rights doctrine in November 1988. 18 U.S.C. § 1346. Therefore, Waldemer ultimately could not have been guilty of mail fraud under the intangible rights theory. *See United States v. Bush*, 888 F.2d 1145, 1146 (7th Cir.1989) (holding that 18 U.S.C. § 1346 could not apply retroactively in light of the Constitution's prohibitions of ex post facto laws). However, this does not mean that he could not have been guilty under any set of facts. Waldemer specifically told the grand jury that he never received any reimbursements from the Kassly Law Firm. Theoretically, he may have received payments after the 1988 amendment, but his lie may have stymied the grand jury's inquiry in this vein. Materiality only calls for the lie to be a potential impediment, not an actual impediment, of the grand jury's inquiry. *Gulley*, 992 F.2d at 113. Put another way, as long as Waldemer could have been indicted for mail

fraud under some set of plausible facts, his lies regarding whether he received the Kassly Law Firm reimbursements (which might have established part of the fraud scheme as well as the use of the mail) are material.

■ The most solid basis for finding materiality, however, remains the government's investigation of Travel Act violations. The Travel Act requires the government to prove that the defendant travelled interstate with the intent to commit or facilitate one or more predicate crimes and thereafter to act overtly toward the commission or facilitation of the predicate crime. 18 U.S.C. § 1952. Included in the range of predicate crimes is state law bribery. Whether the Kassly Law Firm paid Waldemer for his union business and campaign expenses is material to determining whether a bribery scheme existed. We need not inquire as to whether the government could have proven all elements of the Travel Act; it is sufficient that the grand jury investigated the possibility of such a violation and that Waldemer's testimony had some bearing on one of the elements of the Travel Act. Whether Waldemer received any payments at all from the Kassly Law Firm or Stephen Tillery, and if so, why, bears on whether a bribery scheme existed. Therefore, Waldemer's perjury was material.

## II. Prosecutorial Argument to the Jury

### A. Whether the Prosecutor's Inferences Were Reasonable

During the rebuttal portion of his closing argument, the Assistant U.S. Attorney, Stephen Kelly, stated three times to the jury that Waldemer had been subpoenaed for records related to the campaign expenses and that Waldemer had failed to produce them. Waldemer claims that, in mentioning these facts, Kelly improperly argued facts not in evidence and effectively accused Waldemer of obstructing justice, a crime with which he was not charged.

■ While prosecutors may not infuse their closing arguments with facts that the court has not admitted into evidence, they may argue reasonable inferences from the evidence that the jury has seen and heard. *United States v. Martinez*, 939 F.2d 412, 415

(7th Cir.1991). We will reverse Waldemer's conviction only if we find that the prosecutor's rhetoric invoked facts not in evidence and deprived Waldemer of a fair trial. *Id.*

The remarks in question went as follows:

MR. KELLY: You will have the opportunity to read in the ... grand jury testimony exactly how he understood, as the Court will instruct you, that he understood in his mind—this goes to the question of intent and motive for you—that receiving campaign expenses would be improper and you heard in this case that Mr. Waldemer was subpoenaed for these types of records back in July and he did not produce them. He produced a number of invoices—

MR. GOMRIC: Your Honor, we're going to object to that, Your Honor.

THE COURT: Overruled.

MR. KELLY: You heard evidence in this case that he was subpoenaed for these types of records and he did not produce them. He was interviewed and asked about these types of payments. There's no question when he was asked in his interview about these types of questions that he again denied them, denied ever receiving them, and again as you will read the grand jury transcript, he did it again under oath in front of the grand jury.

\* \* \* \* \* \*

MR. KELLY: Let me ask you, ladies and gentlemen, to recall what Mr. Satterfield said about the interview a month before he went in front of the grand jury and how he asked him a whole number of questions that lasted approximately more than an hour, less than two hours, and he reviewed all his questions, and also recall when Mr. Satterfield said before going in front of the grand jury he informed Mr. Waldemer that he was going to ask him many of the same questions that he had asked him in the earlier interview. There was no surprise.

He also asked him about union business expenses and union campaign expenses in that interview a month before. He subpoenaed the records five months before that. There was no surprise. He was given an opportunity to ask "what do you

mean." He was given an opportunity to make sure that he had all the records. But did he produce them? No, ladies and gentlemen.

＊　　＊　　＊　　＊　　＊　　＊

The literal message of these remarks was that the government subpoenaed records that Waldemer didn't produce. Waldemer argues that the prosecutor also implicitly conveyed that Waldemer in fact possessed the documents and failed to produce them only because he wanted to conceal their existence. The government does not dispute this characterization of its argument, but it does dispute that arguing such an inference is improper.

Waldemer argues that the government's inference from the evidence was improper because the court likely would have sustained an objection to an attempt by the government to introduce testimony at trial to prove the same thing. We explored the usefulness of this sort of inquiry in *United States v. Vargas*, 583 F.2d 380, 385 (7th Cir.1978). Vargas was convicted of distributing heroin. As part of its argument, the government referred to Vargas' having skipped bail, a fact that was in evidence, but also pointed out that Vargas could afford to do this because he regularly participated in a drug distribution ring and had sold heroin on prior occasions. *Id.* at 385. We noted that a recognized consideration in deciding whether a prosecutor's inference is reasonably based on the evidence is whether the defendant could have colorably objected to the submission of evidence establishing the same thing. *Id.* We ultimately concluded that the statement had an insufficient basis in the evidence to be a reasonable inference. *Id.* at 386.

Important to reaching that conclusion was the supposition that, had the government attempted to introduce evidence of these other crimes, the defendant likely would have raised a successful objection. *Id.* at 385–86. Yet we have found no other case that articulates this concern in similar instances, and perhaps for good reasons. This consideration is of dubious merit because it involves both the district court and this court in judging hypothetical proffers of evidence. Ruling on actual proffers, where the court can con-

sider the relevancy, the prejudicial impact, and the context of the evidence, is difficult enough. Engaging in the *Vargas* consideration would encourage needless interruptions during closing arguments so that the district court could sift and weigh the theoretical admissibility of hypothetical evidence. And, as we are deprived of what helpful context the atmosphere of the trial provides, our review of the district court's conclusion would push the already suspicious into the realm of the outright artificial.

■ The reasonable inference limitation provides a sufficient safeguard against prosecutorial abuse. The term "reasonable inference" must be defined contextually. Whether the evidence bears logical and proximate connection to the point the prosecutor wishes to prove are perhaps the most obvious considerations in determining whether the inference is reasonable. Also important is whether the prosecutor makes the argument solely to inflame the passions of the jury. *See, e.g., United States v. Ovalle–Marquez*, 36 F.3d 212, 220 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 947, 130 L.Ed.2d 891 (noting that arguments that serve no purpose other than to inflame the passions and prejudices of the jury are improper). Innumerable factors may figure in the reasonableness calculation. The *Vargas* consideration may, at some level, influence the district court's perception of the reasonableness of the argument. But it does not establish a litmus test for the reasonableness of any subset of inferences. Indeed, its hypothetical nature renders it among the weakest of possible considerations.

■ As for the reasonableness of the prosecutor's inference in this case, we find somewhat disconcerting the number of inferential leaps the prosecutor's ultimate point required the jurors to make, but we do not find the inference so attenuated as to deprive the defendant of a fair trial. The prosecutor's argument implicitly proceeded as follows: (1) the government subpoenaed invoices from Waldemer that would have established that the Kassly Law Firm paid his union campaign and business expenses; (2) Waldemer didn't turn any such invoices over, but he did

turn over reams of similar invoices, indicating that he regularly kept such documents; (3) therefore, the jury can infer that Waldemer probably had such documents and deliberately kept them from the government; (4) because Waldemer didn't turn over the documents to the government, he probably had a motive not to do so; (5) that motive was probably the same motive he had to lie to the grand jury: fear of detection of the payments from the law firm; (6) therefore, lying to the grand jury would be consistent with keeping the subpoenaed documents from the government, so it is likely that Waldemer indeed lied to the grand jury.

Such remoteness works against the reasonableness of the prosecutor's inference, but in this case we forebear from distrusting the jury's ultimate conclusion of guilt. The argument simply was not so unreasonable as to deprive Waldemer of a fair trial.

▆▆▆▆ Tangentially, Waldemer argues that the prosecutor, in making the same argument described above, effectively accused him of the crime of obstructing justice, with which he was not charged. As Waldemer did not make this specific objection to the trial court, we review it for plain error—we will reverse on this issue only if the district court erred so seriously as to result in a miscarriage of justice. *United States v. Mounts*, 35 F.3d 1208, 1221 (7th Cir.1994). The context of the prosecutor's argument, including his statement that his proposed inferences were instructive as to motive and intent, does not convey the impression that the prosecutor effectively accused Waldemer of obstructing justice. Rather, they convey the prosecutor's desire to establish by inference from the evidence that Waldemer understood that he may have violated the law, that he had once acted on a motive to avoid detection of that violation, and that he also acted on that motive when lying to the grand jury. The prosecution did not say that Waldemer's failure to turn over the documents was a crime, or even a violation of the law. He merely suggested that such behavior was consistent with the government's theory that Waldemer was trying to conceal the reimbursements. Positing a theory of the defendant's state of mind from circumstantial evidence is acceptable. We find no error.

### B. Whether the Prosecutor Improperly Commented on Waldemer's Decision Not to Testify at Trial

▆▆▆▆ Waldemer also accuses the prosecutor of indirectly referring to his decision not to testify. Such a reference can violate the defendant's right not to testify against himself. *United States v. Ramos*, 932 F.2d 611, 616 (7th Cir.1991). Improper references to the defendant's decision not to testify occur where the prosecutor manifestly intended to refer to the defendant's silence or the statement was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's silence. *Id.* Prior to final argument, the prosecutor informed the district court that he would argue that the government's case was proven by Waldemer's "own words." Waldemer did not object and the court indicated it had no problem with this proposed strategy. During the rebuttal portion of his closing argument, the prosecutor described as Waldemer's own words Waldemer's expense reports to the Kassly Law Firm and letters from Waldemer that described his union campaign activities. Again, Waldemer did not object to these references. Therefore, we review the prosecutor's references to Waldemer's "own words" for plain error. *See Mounts*, 35 F.3d at 1221.

▆▆▆ The prosecutor's references to Waldemer's "own words" were merely references to documents that Waldemer had written. These documents included expense report forms and letters requesting reimbursement for various expenses. The prosecutor characterized these documents as "absolutely related" to a union campaign, and then queried how anyone could understand the documents "to mean anything but what he [Waldemer] described them to mean?". Waldemer asserts that these comments reinforced the fact that he did not testify at trial because he was the only person who could contradict such evidence.

The reference to the documents, however, does not naturally lead to the conclusion that the prosecution was referring to Waldemer's

silence. The record instead reflects that the government was arguing the meaning of the documentary evidence. The government nowhere mentioned or implied that Waldemer did not testify or that Waldemer would have testified if he were innocent. Again, we find no error.

### III. Instructions and Permissive Inferences and Mandatory Presumptions

 Waldemer continues to direct our attention to the inferences the prosecution sought to draw about his motives by attacking Instruction No. 10, which informed the jury as follows:

> Under federal law, it is improper for a union official to accept any union campaign contributions from any employer. Specifically, federal law provides that "no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election." This law applies even where the contribution may have been minimal.
>
> I want to caution you that the defendant is not charged in this indictment with receiving improper payments of union campaign expenses. I want to instruct you that you may only consider this instruction in determining the defendant's intent and state of mind in answering questions before the grand jury.

 Waldemer charges that this instruction is unconstitutional because it creates for the jury either an irrational permissive inference or a mandatory presumption. A permissive inference is an inference that the instructions allow the jury to make from the evidence. An irrational permissive inference instruction tells the jury to infer facts from the evidence that run counter to logic and common sense. *Francis v. Franklin*, 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985). Courts may not instruct juries that they may make irrational permissive inferences. *Id.* A mandatory presumption occurs where an instruction requires the jury to presume the existence of an ultimate fact, one that is an element of the offense charged, from the proof of a predicate, or non-element, fact. *Sandstrom v. Montana*,

442 U.S. 510, 523, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). Such an instruction unconstitutionally shifts the burden of proof from the government to the defendant. *Id.*

 Because Waldemer raises these arguments for the first time in his appeal, we review Instruction No. 10 for plain error only. In our typical review of constitutional challenges to jury instructions, we examine whether there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that violates the constitution." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). We look at the charge as a whole and, "[i]f they are fair and accurate summaries of the law, the instructions will not be disturbed on appeal." *United States v. Abdelkoui*, 19 F.3d 1178, 1182 (7th Cir.1994) (citation omitted). Therefore, we will reverse only if we find both that Instruction No. 10 was so plainly erroneous as to render unfair the entire charge and that its errors probably led the jury to miscarry justice in convicting Waldemer.

Waldemer argues that Instruction No. 10 encouraged the jury to make an impermissible inference in that it fallibly argued that Waldemer had a motive to lie to the grand jury. The prosecution's argument was that, because Waldemer knew it was against the law for him to accept union campaign and business reimbursements from any employer, he lied to the grand jury about receiving such reimbursements from the Kassly Law Firm in order to avoid detection. The argument was fallible, Waldemer contends, because accepting such reimbursements, while legally improper, was not punishable by criminal or civil sanctions. So the most Waldemer apparently had to lose from telling the grand jury that he received the reimbursements was the remaining one month of his term as union legislative representative.

Such a cost hardly seems worth the risk of lying to the grand jury, we agree. But that only means that Waldemer miscalculated the risks involved. Waldemer wants us to find that, because the cost of telling the grand jury that he received the payments was so low, it would be illogical to conclude that he

told them otherwise in order to avoid those costs. Implicit in Waldemer's argument is that the reason he told the grand jury that he did not receive the reimbursements was that he was telling the truth. The trouble with this theory is that Waldemer posits it to us rather than the jury.

We find it reasonable to conclude that, although in retrospect the price for admitting that he accepted improper reimbursements from Kassly Law Firm was low, Waldemer may have miscalculated that price to be so high as to be worth the risk of lying to the grand jury. This is not the only logical outcome one may deduce from the facts, but it is plausible. It is the jury's province to decide which inferences to believe. The inference that the instructions allowed did not push the jury into a non sequitur.

Waldemer argues in the alternative that the instruction mandatorily presumed that he knew that receiving union campaign and business expenses was legally improper. He reasons that, because the prosecutor argued that he knew of this statute, the jury could reasonably conclude that it was required to find that Waldemer knew of the prohibition against such reimbursements.

We do not find this argument persuasive. The instruction, as with the government's final argument, merely discusses a possible state of mind and intent relating to Waldemer's testimony. Waldemer was free to dissuade the jury from reaching the conclusion permitted by the instruction. The defendant may not reach through us what it failed to reach through the jury. We find that this instruction does not present a reasonable likelihood that the jury would have presumed that Waldemer knew of the labor law statute.

 The propriety of the instructions, however, may turn on whether they introduce extraneous concerns that interfere with the jury's focus on the central issue of the case. We have found erroneous an instruction that articulated a regulatory predicate for a felony where the regulation did not apply to the defendant. *Abdelkoui*, 19 F.3d

at 1182–83. In *Abdelkoui*, we concluded that a food stamp regulation that applied to grocers was inapposite to a small tire and used automobile merchant on trial for illegally dealing in food stamps. *Id.* The government in that case argued that the instruction went to the defendant's mental state at the time he engaged in the felonious transactions, but we concluded that the instruction was of no help to the jury in determining the defendant's guilt. *Id.* The instruction was not helpful because the grocer's regulation would not likely have informed the defendant's conduct.[1]

As the government admits, Instruction No. 10 has nothing to do with any elements of the offense; it merely instructs the jury as to a possible motive. But *Abdelkoui* is distinguishable from this case because here a reasonable juror could conclude that the labor law in question may have informed Waldemer's conduct. Although Waldemer denied knowing of the prohibition against receiving reimbursements for union campaign and business expenses from employers, he practiced labor law, participated extensively in union activities, and held union offices. Instruction No. 10 provided reasonable context for the jury to understand the world in which Waldemer operated. It did not digress from the proper focus of the case.

 Furthermore, the limitations of the instruction hedged against any unfairly prejudicial impact on the jury. The instruction at issue in *Abdelkoui* did not limit the instruction's role in the jury's deliberations. A statement of the law that does not directly bear on the crime with which the defendant is charged and which also does not circumscribe its usefulness may indeed unfairly prejudice the defendant. Here, the jury was told the limited purpose of the instruction: it was a contextual guide. The jurors were free to accept or reject it as such. *See Ulster County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2225, 60 L.Ed.2d 777 (1979) (finding that burden of proof does not shift where the instruction leaves finder of fact to accept or reject the inference).

---

1. We also note that the error was found to be harmless in light of the overall accuracy of the instructions.

As for the defendant's presumption of innocence and the government's burden of proof, other instructions took care of these necessary cautions to the jury. Instruction No. 10 was not erroneous and did not, therefore, induce a miscarriage of justice.

## IV. Sufficiency of the Evidence

In order to prove that Waldemer lied to the grand jury, the government had to show that, in fact, the Kassly Law Firm had reimbursed him for union campaign and business expenses. Prosecutors submitted into evidence such documents as Waldemer's expense reports and letters to the Kassly Law Firm in which he discussed the arrangements for the reimbursements. Waldemer now argues that these documents constitute uncorroborated out-of-court statements by the defendant that may not, by themselves, support his conviction.

A defendant may not be convicted "based solely on his own *uncorroborated* admissions made *after* the [crime] has ended." *United States v. Mukovsky*, 863 F.2d 1319, 1325 (7th Cir.1988), *cert. denied*, 489 U.S. 1067, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989). Statements that a defendant made before or during the commission of the crime do not have to be corroborated to convict the defendant. *See id.* We grant that the expense reports and letters constitute out-of-court statements by the defendant. And we will even assume, for the sake of argument, that they are uncorroborated.[2] However, the doctrine that a defendant's own words alone may not convict him does not apply here.

Waldemer submitted the statements at issue in 1986, 1987, and 1988, well before he committed perjury in 1991. Because Waldemer made the statements at issue before he committed the crime, the statements are not the sorts of verbalization at which the requirement of corroboration is directed— they are neither admissions nor confessions. *See Warszower v. United States*, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941) (concluding that "[t]he rule requiring corroboration of confessions protects the ad-

ministration of criminal law against errors based upon untrue confessions alone.").

The expense reports and notes to the Kassly Law Firm are merely incriminating evidence that happen also to be Waldemer's statements. Through them, Waldemer does not admit that he lied to the grand jury; rather, he evidences the occurrence of a transaction that betrays his lie. Thus, the expense reports, notes, invoices, and checks presented enough evidence from which a reasonable jury could conclude beyond a reasonable doubt that Waldemer lied to the grand jury.

As the remainder of Waldemer's claims lack merit, we do not discuss them.

AFFIRMED.

SKINNER, District Judge, dissenting.

I agree with Part I of the majority opinion. In my view the traditional plenary investigative power of the grand jury was at least broad enough to cover its activity in this case. I also agree with Part IV of the opinion. I have some doubt, however, that the attenuated inferences in the prosecutors' argument described in Part II of the opinion are sufficient to support a finding of guilt beyond a reasonable doubt, but I would not dissent on this ground alone.

I do disagree with Part III of the opinion, which deals with the district court's instruction No. 10, quoted on page 10. In my view this instruction does create an irrational permissive inference that the defendant had a motive to lie because of the existence of a federal statute making it "improper for a union official to accept any union campaign contributions from any employer." Fundamental to the integrity of this inference is the assumption that the defendant was aware of the statute, which was not established by the evidence. The underlying assumption is that because of his extensive union activity he would have known of this statute. Such underlying assumptions are supposed to be based on common experience. I submit that

---

**2.** We assume this only because whether the statements are corroborated is irrelevant. In fact, however, the purpose of these expense reports and notes arguably is corroborated by telephone bills, checks, and receipts, and testimony of witnesses.

common experience teaches that people are, more often than not, woefully ignorant of the statutes which govern their activities.[1]

Furthermore, I believe that a jury might well assume that violation of a federal law would carry a significant sanction, which would be a strong inducement to lie. The fact that there is no civil or criminal penalty attached to the statute in question was not revealed to the jury. In my view this omission compounds the error.

In my opinion this was plain error, and in the context of this case, I can not say that it was harmless. Accordingly, I respectfully dissent.

---

**1.** Some of us may have noted this phenomenon even among lawyers, and (dare I say it?) judges.