Mark D. **WALDEMER**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

No. 92–30111.
Civil No. 95–630–MMM.

United States District Court, S.D. Illinois.

Jan. 3, 1996.

**1107**

Douglas B. McKechan and Mark B. Moran, McKechan & Moran, Granite City, IL, for petitioner.

Frank Marine and Robert Blume, Department of Justice, Washington, DC, for respondent.

## *MEMORANDUM OPINION*

MIHM, Chief Judge.

This matter comes before the Court upon Petitioner's Motion for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. Mark D. Waldemer was convicted after trial on one count (Count 12) of making a false statement. *United States v. Waldemer,* Case No. 92–30111. This Court sentenced him to five months in prison, to be followed by five months of home detention. He appealed his conviction to the Seventh Circuit Court of Appeals. His conviction was affirmed. *See United States v. Waldemer,* 50 F.3d 1379 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 2598, 132 L.Ed.2d 845, *reh'g denied,* — U.S. ——, 116 S.Ct. 27, 132 L.Ed.2d 909 (1995).

In this habeas petition, Waldemer raises a large number of assertions regarding the appropriateness of his conviction. Some of those assertions fail because they were raised on direct review and were decided by the Court of Appeals. Several other assertions are procedurally barred because Waldemer failed to raise those issues on direct review and he has failed to establish necessary cause and prejudice, and no fundamental miscarriage of justice is involved. Waldemer's claims of ineffective assistance of trial counsel and appellate counsel are either barred and/or without merit.

Waldemer's most serious claim for consideration in this Order is the assertion that the case of *United States v. Gaudin,* — U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), compels a new trial. *Gaudin* announced a new rule of law that the issue of materiality in perjury and false statement cases is an element of the offense which must be presented to the jury for determination. Waldemer's reliance on *Gaudin,* while timely, also fails because this Court's failure to present the issue of materiality to the jury was not plain error and was harmless error.

After reading the briefs and listening to the oral arguments in the case for this Petition, the Court concludes that there is no need for an evidentiary hearing on the issues presented. "[T]he record conclusively demonstrates that the petitioner is not entitled to

relief." *Barker v. United States,* 7 F.3d 629, 633 n. 3 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994).

### *Individual Claims for Habeas Relief*

A. *Issues Raised on Direct Review*

■ 1. Petitioner claims (Habeas Corpus Petition ("H.C.") at 16–19) that the evidence at trial did not sufficiently establish the elements of "knowledge" and "falsity" for the offense charged. This claim was considered and rejected at the trial stage and further raised in the appellate brief on direct review to the Seventh Circuit (see Government's Exhibit to Government's Response to the Petitioner's Motion for Habeas Corpus ("GX.") 1 at 48). The Seventh Circuit held that the evidence was sufficient to support the conviction. *Waldemer,* 50 F.3d at 1388–89. The Seventh Circuit's ruling on this issue is the law of the case and may not be relitigated in this habeas petition. *See Norris v. United States,* 687 F.2d 899, 900 (7th Cir.1982).

2. Petitioner claims (H.C. at 12–13) that the Government improperly applied 29 U.S.C. § 481(g), thereby leading the Court to incorrectly instruct the jury. This claim was fully and fairly litigated in the trial court and rejected by the giving of Instruction No. 10, which stated:

> Under federal law, it is improper for a union official to accept any union campaign contributions from any employer. Specifically, federal law provides that no monies of an employer shall be contributed or applied to promote the candidacy of any person in an election. This law applies even where the contribution may have been minimal.
>
> I want to caution you that the defendant is not charged in this indictment with receiving improper payments of union campaign expenses. I want to instruct you that you may only consider this instruction in determining the defendant's intent and state of mind in answering questions before the grand jury.

Tr. V–3, p. 145. Petitioner raised the same issue in his appellate brief on direct review to the Seventh Circuit (GX. 1 at 34–36). The argument was rejected by the Seventh Cir-cuit. *Waldemer,* 50 F.3d at 1386–88. *See Norris, supra.*

3. Petitioner asserts (H.C. at 14) that the prosecutor improperly commented on Petitioner's failure to testify at trial, thereby infringing upon Petitioner's Fifth Amendment right against self-incrimination. This argument was made in the appellate court (GX. 1 at 42–44). The Seventh Circuit found no error. *Waldemer,* 50 F.3d at 1385. *See Norris, supra.*

■ 4. Petitioner claims (H.C. at 14–15) that the jury rendered a verdict without the Court having made a finding of the element of "materiality" under 18 U.S.C. § 1623. The question of materiality was fully and fairly litigated in this case. This Court denied a motion to dismiss on this ground on two occasions prior to trial. During the course of trial, the issue of materiality arose during discussions about jury instructions. During that discussion on jury instructions, the Court made the following observation:

> THE COURT: It's my view since it is the Seventh Circuit's position that [materiality] is something to be ruled on by the Court and the defense has—there's no indication either in opening statement or in any of the questioning in this case that the defense has made or will make any effort to argue his answers were immaterial then I'm going to go with 14B.

Tr. V–III, p. 92. Instruction No. 14B was the elements instruction telling the jury what they must find in order to return a verdict of guilty on the charge of perjury. The 14B alternative did not include the element of materiality since the Court believed that was a question of law for the Court to decide. While the Court did not explicitly make a finding of materiality in this case, and should have done so, it is painfully clear by the approval of the jury instruction and the discussion of this matter that occurred during the jury instructions conference that the Court did, in effect, make a finding of materiality. The issue of materiality was raised on direct appeal, and the Seventh Circuit explicitly found the existence of materiality. *Waldemer,* 50 F.3d at 1382–83. *See Norris, supra.*

5. Petitioner argues (Memorandum in Support of Motion for Habeas Corpus ("M.H.C.") at 19–25) that the indictment's failure to state essential facts resulted in literal and constructive amendments after proof. This argument was raised and rejected at the trial level and at the appellate level. In fact, the Petitioner's present argument repeats, verbatim, his argument to the Seventh Circuit in his appeal brief on direct review. *Compare* M.H.C. at 24–25 with GX. 1 at 40–42. The Seventh Circuit, finding that the issue "lacked merit," did not address it further in its opinion. *Waldemer,* 50 F.3d at 1388. *See Norris, supra.*

### B. *Issues Not Raised on Direct Review*

■ 1. Petitioner argues (H.C. at 14; M.H.C. at 19–25) that the Government failed to specify in the indictment to what union office within the Brotherhood of Locomotive Engineers ("BLE") Petitioner's employer was alleged to have made the contribution in the form of reimbursement and, as a result, Petitioner was deprived of his right to prepare an adequate defense. The facts underlying this issue were clear to the Petitioner at the time of the appeal since they relate solely to matters surrounding the trial record, and he failed to raise this issue before the Seventh Circuit. By his failure to raise this issue, the appellate court was deprived of the opportunity to correct the error, if it was error. Petitioner is now procedurally barred from presenting the issue in his habeas petition. Petitioner has given no explanation as to why the issue was not raised on direct review. Without such a showing of cause, the Court cannot properly consider the claim. *Wainwright v. Sykes,* 433 U.S. 72, 89, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977).

■ There is also no prejudice involved in this claim. *Id.* The four questions which were put to the Petitioner in the grand jury proceeding did not specify any particular office in regard to which the payments were made. Consequently, what the Government needed to prove was that the Petitioner received reimbursement for any union campaign expenses and then falsely testified before the grand jury that he had not received reimbursement for union campaign expenses.

■ 2. Petitioner alleges (H.C. at 15) that the trial court constructively amended the indictment by dismissing the "General Allegations" section of the indictment, including all references to the BLE, thereby permitting a conviction based on monies reimbursed to Petitioner for conducting the law firm's business rather than monies reimbursed to Petitioner for conducting BLE's business. These matters clearly could have been and should have been raised at the time of trial since they relate to matters surrounding the indictment and what the jury was told concerning the indictment at the time of trial. There was no objection regarding this matter at trial. While the Court cannot find a specific reference to this in the trial record, it is the Court's recollection that defense counsel was not eager to have the jury hear all of the "General Allegations" contained at the beginning of the indictment and was quite content to have the Court merely refer to the specific wording contained in Count 12. Petitioner failed to raise this issue before the Seventh Circuit and is now procedurally barred from presenting the issue in his habeas. In any event, the claim is without merit. By not reading the "General Allegations" section of the indictment, the Court, at worst, narrowed the language of the indictment. This is not a fatal variance. *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). The Court views the "General Allegations" contained at the beginning of the indictment as unnecessary to and independent of the specific allegations contained in Count 12 and, consequently, that they constituted the type of surplusage which can be omitted. *Miller,* 471 U.S. at 136, 105 S.Ct. at 1815.

It is clear from reading Count 12 that its wording was internally complete and not legally dependent on the "General Allegations":

#### Count Twelve

(18 U.S.C. § 1623—False Declaration Before Grand Jury)

The Grand Jury Further Charges:

1. On or about November 19, 1991, in the Southern District of Illinois, MARK WALDEMER, the defendant herein, while under oath and testifying in a proceeding before Grand Jury No. 91–1, a Grand Jury of the United States in the Southern District of Illinois, knowingly did make a false material declaration, that is to say:

2. At the time and place aforesaid the grand jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 1341, 1343, 1346 and 1952 had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations. It was material to the said investigation that the grand jury ascertain if STEPHEN TILLERY or the law firm of Kassly, Bone, Becker, Dix, Tillery & Reagan (hereinafter, "Kassly, Bone law firm") ever paid union campaign and union business expenses of defendant WALDEMER.

3. At the time and place alleged, defendant WALDEMER appearing as a witness under oath at the proceeding before the grand jury knowingly made the following declarations in response to questions with respect to the material matter alleged in paragraph two as follows:

"Q. When you were with the firm [Kassly, Bone], did they pay any campaign expenses to you while you were an employee there?

A. No, sir."

\* \* \* \* \* \*

"Q. To your knowledge, did they ever pay for any union business expenses while you were employed at the Kassly, Bone firm?

A. No, sir."

\* \* \* \* \* \*

"Q. After you left the Kassly, Bone firm, did the Kassly, Bone firm and/or Stephen Tillery ever pay for your campaign expenses?

A. No, sir."

\* \* \* \* \* \*

"Q. Did the firm pay for any union business—?

A. Not that I know of."

4. The aforesaid testimony of defendant WALDEMER, as he then and there well knew and believed, was false in that, on or about March 31, 1986, October 19, 1987, November 24, 1987, and September 26, 1988, STEPHEN TILLERY and the Kassly, Bone law firm, paid for certain union campaign and union business expenses incurred by WALDEMER.

All in violation of Title 18, United States Code, Section 1623.

Indictment, pp. 17–19. The entire count was read to the jury at the beginning of the trial. Tr. of Voir Dire, Dec. 6, 1993, pp. 8–9.

Based on the record as it developed, the Court does not believe that there is any possibility that the jury could or did convict the Petitioner on the basis that monies he had received from the law firm were monies which were being spent pursuant to some legitimate business expense of the law firm.

3. Petitioner argues (H.C. at 15) that the trial court's denial of his request for disclosure of the identity of a confidential informant prevented him from raising claims of prosecutorial vindictiveness and selective prosecution. These matters were addressed at the pretrial stage and were clearly available in the record for inclusion in the brief on appeal. No cause is shown for the failure to include this item on appeal. There is nothing indicating that the "informant" would have or could have provided materially exculpatory evidence essential to affording the Petitioner a fair trial. *United States v. Garcia,* 625 F.2d 162, 166 (7th Cir.1980), *cert. denied,* 449 U.S. 923, 101 S.Ct. 325, 66 L.Ed.2d 152 (1980). The transcript of the ex parte dialogue between the Court and the prosecutors regarding the identity of the confidential informant is preserved in this record under seal for review by the appellate court if it so desires.

4. Petitioner argues (H.C. at 15) that the Government may have prosecuted this matter in contradiction to their statutory duties under the Railway Labor Act, 45 U.S.C. 152, ¶¶ Third, Tenth, by preventing railroad management from interfering with Petitioner's union members' right to select their own

representatives. There is no cause shown as to why this matter was not raised at trial or on appeal so it is procedurally barred. As to prejudice, the statute imposes no duty on any attorney for the Government other than to "prosecute under the direction of the Attorney General of the United States, all and necessary proceedings for the enforcement of the provisions of this section ..." 42 U.S.C. 152, ¶ Tenth. Petitioner's argument regarding the gravamen of this provision borders on the frivolous.

### C. Ineffective Assistance of Trial Counsel

■ Petitioner asserts (H.C. at 15) that prosecutorial misconduct during trial and unspecified error by the trial court "caused" his trial attorney to be ineffective, thereby depriving Petitioner of his Sixth Amendment right to the effective assistance of counsel at trial. He bases this claim on alleged errors appearing in the trial record and does not, in the present Petition, rely on extrinsic evidence. Petitioner could have raised this ineffective assistance of trial counsel claim on direct appeal. Therefore, he has waived the claim and is prohibited from raising it under 28 U.S.C. 2255. In addition, the claim of ineffective assistance of trial counsel is without merit.

■ The record establishes that trial counsel aggressively raised numerous issues, put forward vigorous defenses at trial, aggressively cross examined the Government's witnesses, and presented detailed and competent arguments to the jury. It should be noted that Petitioner's trial counsel were successful in obtaining dismissal of all counts against Petitioner except for the perjury charge. Trial counsel's performance did not fall below the objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

As to the second prong of the Strickland test, the Court finds that the specific claims made by the Petitioner as to how his counsel's assistance was ineffective are without merit, and, therefore, Petitioner has suffered no prejudice. Id. at 692, 104 S.Ct. at 2067.

### D. Ineffective Assistance of Appellate Counsel

Petitioner asserts (H.C. at 15) that he was deprived of the effective assistance of appellate counsel for the following reasons:

■ 1. The Petitioner first claims (H.C. at 15–16) that his appellate counsel failed to file post-appeal motions in opposition to Assistant U.S. Attorney Stephen Kelly's argument to the Seventh Circuit. Petitioner claims that Mr. Kelly's appellate argument was misleading. The argument in question was essentially the same argument which Mr. Kelly made at the trial in his summation. The issue of the appropriateness of that argument was an issue on appeal. The appellate court found no misconduct. More importantly, the Seventh Circuit's opinion makes it clear that the court carefully considered the record relating to the claim of improper arguments and did not rely solely or even substantially on the oral arguments of the attorneys in reaching its decision on this point. Waldemer, 50 F.3d at 1383–86. Since the underlying claim has no merit, the failure to raise it on appeal violates neither prong of the Strickland test.

■ 2. Petitioner asserts (H.C. at 18–19) that he was deprived of a factual impossibility defense because his appellate counsel failed to advise the Court of Appeals that the Petitioner ran unopposed for the position of Division 48 Legislative Representative in September 1988, ran for more than one Division 48 union office over a period of time, and allegedly campaigned at places where no voting-eligible union members were present. The Court rejects the assertion that any of the details of this claim give rise to a "factual impossibility" defense. Even admitting each of the component parts of the claim, Petitioner could still have committed the crime of perjury for which he was convicted. The claim is without merit.

3. Petitioner claims (H.C. at 19) that appellate counsel failed to understand and appropriately brief the issues surrounding the applicability of 18 U.S.C. §§ 481(g), 482, 483. This claim has previously been rejected by the Court as being without merit, supra at p. 1108.

4. Petitioner argues (H.C. at 19) that his appellate counsel did not "fully brief" the fact that the evidence was allegedly insufficient to establish the "knowledge" and "falsity" elements of the perjury charge. The Court has previously found this claim to be without merit, *supra* at pp. 1107–1108.

5. Petitioner claims (H.C. at 19) that his appellate counsel failed to argue that the terms "campaign expenses," "union business expenses," and the issue of when the Petitioner "left" the law firm were sufficiently ambiguous that the Petitioner was unable to prepare an adequate defense. The issue of ambiguity was raised on more than one occasion at the trial level and soundly rejected by the Court. There is nothing about the terms "campaign expenses" or "union business expenses" or the issue of when the Petitioner "left" the law firm which were sufficiently ambiguous so that he was unable to prepare an adequate defense.

6. Petitioner argues (H.C. at 20) that his appellate counsel failed to question certain evidentiary rulings of the trial court, such as those preventing cross examination, and failed to raise and contest the ethical violations which allegedly occurred during trial. The Court cannot determine that any of the allegations made in relation to this claim could have possibly changed the outcome of the proceeding. Consequently, there is no prejudice.

7. Petitioner alleges (H.C. at 18) that his appellate counsel failed to argue that the Government constructively amended the indictment by proving reimbursement to the Petitioner for the law firm's "union business expenses," while indicting the Petitioner for receiving reimbursement for BLE's "union business expenses." This argument has previously been rejected by the Court as being without merit, *supra* at pp. 1108–1109.

8. The Court has also previously found as being without merit the claim that appellate counsel failed to argue that the Government never specified for what union office the Petitioner was alleged to have been campaigning, *supra* at pp. 1108–1109.

9. Petitioner claims (H.C. at 20) that his appellate counsel failed to do proper post-trial research, failed to make an adequate or proper post-trial investigation or analysis of the record, and failed to consult with him about various issues to be raised on appeal. None of this leads to any reasonable belief that if additional research, investigation, or consultation would have occurred, the outcome on appeal would have been different. Consequently, there is no showing of prejudice. The Court finds that appellate counsel properly followed the teachings of the Supreme Court and the Seventh Circuit in winnowing out weak issues and focusing on a few important issues.

Consequently, the failure of Petitioner's appellate attorney to raise each and every claim that the Petitioner believes should have been raised was neither professionally unreasonable nor prejudicial to the Petitioner in any manner. Therefore, neither prong of the *Strickland* test has been met.

### E. *Issues Relating to the Retroactivity of Gaudin*

The really serious questions concerning this petition were not raised initially in the written pleadings but were, instead, raised during the oral argument on this matter which occurred on October 12, 1995 and later by Supplemental Motion.

On June 19, 1995, the Supreme Court decided the case of *United States v. Gaudin*, —— U.S. ——, 115 S.Ct. 2310. In *Gaudin*, the Supreme Court held that the element of materiality in a false statement case (18 U.S.C. § 1001) is an element of the offense which must be submitted to the jury for a decision. Prior to the *Gaudin* decision, every circuit in the country except for the Ninth Circuit had taken the position that materiality was a question of law to be decided by the judge. *Gaudin*, —— U.S. at ——, 115 S.Ct. at 2322.

There can be no question here that the holding in *Gaudin* enunciated a new proposition of law. Consequently, pursuant to *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), if the case which is the subject of the habeas were still on direct appeal at the time that the new law is announced, the new rule is to be applied to

that case. Therefore, the first question to be answered is whether the direct appeal in *United States v. Waldemer* was still pending when the decision in *Gaudin* was announced.

The following is the pertinent chronology:

12/9/93 Jury verdict of guilty

5/18/94 Waldemer sentenced

3/20/95 Conviction affirmed by the Seventh Circuit

4/12/95 Seventh Circuit denies rehearing and suggestion for rehearing en banc

5/19/95 Waldemer files petition for writ of cert. with the Supreme Court

6/19/95 Supreme Court denies cert.

6/19/95 Supreme Court decides *Gaudin*

6/20/95 Waldemer files petition for rehearing regarding cert. to the Supreme Court

6/27/95 Seventh Circuit issues its mandate

8/11/95 Supreme Court denies petition for rehearing

8/15/95 Waldemer files Motion for Habeas Corpus

The Petition for Certiorari was denied on the same day the *Gaudin* case was decided. However, the petition for rehearing was not denied until after the *Gaudin* case was decided. The Government argues that, according to Supreme Court Rule 16.3, the direct appeal was over as of the date of the denial of the petition for certiorari and that the direct appeal did not extend into the period of time when the motion for rehearing was being considered and determined. Petitioner argues that the direct appeal was not final until the petition for rehearing was denied on August 11, 1995. The Court finds that the direct appeal in this matter was not concluded until after the *Gaudin* case was decided on June 19, 1995. The case of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), is instructive on this point.

> By "final" we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari *finally* denied. (citations omitted).

*Griffith,* 479 U.S. at 321, n. 6, 107 S.Ct. at 712, n. 6 (emphasis added). *See also English v. United States,* 42 F.3d 473, 485, n. 1 (9th Cir.1994) (Supreme Court Rule 44.2 (providing 25 days for petitions for rehearing of a denial of certiorari)).

So, everything being equal, *Gaudin* would apply to this situation, and Petitioner would be entitled to a new trial. However, the Government makes the additional points that, even if the Court were to find that *Gaudin* is retroactively applicable to this case, the failure of the jury to be instructed on the issue of materiality was not plain error and constituted harmless error. Petitioner responds that the nature of this deficiency is such that it is not subject to the harmless error analysis. In support of that position, Petitioner cites the case of *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

The question in the *Sullivan* case was "whether a constitutionally deficient reasonable doubt instruction may be harmless error." *Id.* at 276, 113 S.Ct. at 2080. In *Sullivan,* Justice Scalia, who wrote the majority opinion, focused his analysis on whether or not the jury which had returned the guilty verdict in the case would have returned the same verdict of guilty had they been given the proper instruction regarding guilty beyond a reasonable doubt. He found that simply was not a possibility.

> There being no jury verdict of guilty beyond a reasonable doubt, the question whether the *same* verdict of guilty beyond a reasonable doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object,* so to speak, upon which harmless error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough ... The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the state would

be sustainable on appeal; it requires an actual jury finding of guilty.

*Id.* at 280, 113 S.Ct. at 2082 (emphasis in original).

It is interesting to note that in his concurring opinion in *Sullivan,* Chief Justice Rehnquist discussed the difference between "trial errors," which are amenable to harmless error analysis, and "structural defects," which are not. *Id.* at 282, 113 S.Ct. at 2083. As Chief Justice Rehnquist noted, ". . . it is the rare case in which a constitutional violation will not be subject to harmless error analysis." *Id.* (citing *Arizona v. Fulminante,* 499 U.S. 279, 289–291, 111 S.Ct. 1246, 1254, 113 L.Ed.2d 302 (1991) (listing examples of structural errors)).

In the *Gaudin* case, the government made no effort to argue harmless error. In his concurring opinion in *Gaudin,* Chief Justice Rehnquist, joined by Justices O'Connor and Breyer, noted that "there is a 'strong presumption' that a constitutional violation will be subject to harmless error analysis." *Gaudin,* —— U.S. at ——, 115 S.Ct. at 2321 (citations omitted.)

> In particular, the court has subjected jury instructions plagued by constitutional error to harmless-error analysis. *See, e.g., Yates v. Evatt,* 500 U.S. 391, 402, 111 S.Ct. 1884, 1892, 114 L.Ed.2d 432 (1991) (taint of an unconstitutional burden-shifting jury instruction subject to harmless-error analysis); *Carella v. California,* 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (per curiam) (jury instruction containing an erroneous mandatory presumption subject to harmless-error analysis); *Pope v. Illinois,* 481 U.S. 497, 502–04, 107 S.Ct. 1918, 1921–23, 95 L.Ed.2d 439 (1987) (jury instruction misstating an element of an offense subject to harmless-error analysis); *Rose [v. Clark ]* supra, 478 U.S. [570] at 581–582, 106 S.Ct. [3101] at 3107–3108 [92 L.Ed.2d 460 (1986) ] (jury instruction containing an erroneous rebuttable presumption subject to harmless-error analysis); *but see Sullivan v. Louisiana,* 508 U.S. 275, ——, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993) (erroneous burden of proof instruction not subject to harmless-error analysis). The Court today has no

occasion to review the Court of Appeals' conclusion that the constitutional error here "cannot be harmless."

*Id.*

So, is this a situation like the jury instruction in *Sullivan* that is not amenable to harmless error analysis, or as Chief Justice Rehnquist seems to suggest in his concurring opinions in *Sullivan* and *Gaudin,* is this the type of situation which is amenable to harmless error analysis—and, if so, was the error harmless?

The most instructive case this Court has been able to find on this point is *United States v. Parmelee,* 42 F.3d 387 (7th Cir. 1994). *Parmelee* also involved a problem regarding jury instructions.

> We have no question that Section 1324(a)(1)(B) implicitly requires the government to prove beyond a reasonable doubt not only that the defendant knew the alien he transported had entered this country in violation of immigration law, but also that the defendant knowingly transported the alien to further that violation, that is, acted wilfully.

*Parmelee,* 42 F.3d at 390.

> [T]he jury was not specifically informed that to be guilty, the defendants had to know not only that the Polish aliens had entered this country illegally, but also that they were furthering the aliens' illegal entry by transporting them.

*Id.* at 391. The question in *Parmelee* was whether or not the harmless error analysis originated in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), was applicable to the record in that case. Judge Posner pointed out:

> While the Supreme Court has yet to decide the question whether instructional error of this sort can ever be harmless, we believe that in light of *Sullivan,* its most recent pronouncement on the circumstances in which per se error will be found, the court would resolve this question in the affirmative. Thus, our application of the reasoning in *Sullivan* to the facts of the case leads us to conclude that the district court's failure to clearly instruct the jury on Section 1324(a)(1)(B)'s guilty knowledge

requirement is amenable to harmless error review. In our opinion, there exists beyond a reasonable doubt jury findings from which we can say that the instructional error did not contribute to the jury's verdict of guilty.

*Id.* at 392.

In the case at bar, the jury was not asked to find that the statements made by Waldemer during his grand jury testimony which were determined to be false were also material. Rather, the jury was instructed as follows:

> To sustain a charge of false declaration before a grand jury, the government must prove the following propositions. First, that the Defendant, while under oath, testified falsely before a United States grand jury as charged in the indictment. And second: that the Defendant knew the testimony was false.

Tr. Vol–III, p. 145.

 In line with the discussion by Judge Posner found at pages 392–93 of *Parmelee*, it would be fair to say that, in theory, under such an instruction, a jury could convict the defendant for making a false statement to the grand jury, knowing that the testimony was false, where the testimony was not "material." As Judge Posner found in the *Parmelee* case, however, this Court also finds that, under the factual circumstances of this case, a rational jury, which found that the Defendant did testify falsely while under oath before the grand jury and that he knew that the testimony was false, also would have necessarily found that the false statements were "material." *Parmelee*, 42 F.3d at 393.

The issue of the materiality of the statements, while challenged by defense counsel in this case, was never really in question. There was never any doubt as to the purpose of the grand jury investigation. In that regard, the former prosecutor (at the time of Waldemer's grand jury testimony) and now-Judge Satterfield, testified on direct examination early in the case as follows:

> KELLY: What was the grand jury investigating at that time?
>
> SATTERFIELD: The grand jury was investigating whether some improper payments were being made by an attorney to union officials in order for the union officials to use their position to assist that attorney in obtaining legal representation of injured union members.
>
> KELLY: Were you looking for evidence of payments?
>
> SATTERFIELD: The grand jury was certainly looking for evidence of payments and looking for the reason behind those payments.
>
> KELLY: What possible violation of federal law were you investigating?
>
> SATTERFIELD: We were looking at the federal labor law statutes, the mail fraud statutes and the Travel Act statutes.

Tr. V–I, p. 27.

The record in this case is replete with references to Waldemer being a union official and working for two different plaintiffs' personal injury law firms which specialized in FELA cases. There are also numerous references in the record to payments by the law firms to Waldemer for various reasons. There is no dispute that Waldemer worked for the law firms and that there were members of his union or related unions who came to the law firms for which he worked to have those attorneys represent them in FELA matters. It is painfully obvious to this Court that the questions put to Waldemer in the grand jury proceeding and his responses to those questions were material to the investigation which the grand jury was conducting.

In the appellate opinion in this case, the Seventh Circuit began its discussion by dealing with the issue of materiality. After discussing problems with the first two reasons stated for conducting the grand jury investigation, the Seventh Circuit found:

> The most solid basis for finding materiality, however, remains the government's investigation of Travel Act violations. The Travel Act requires the government to prove that the defendant traveled interstate with the intent to commit or facilitate one or more predicate crimes and thereafter to act overtly toward the commission or facilitation of the predicate crime. 18 U.S.C. § 1952. Included in the range of predicate crimes is state law bribery.

Whether the Kassly law firm paid Waldemer for his union business and campaign expenses is material to determining whether a bribery scheme existed. We need not inquire as to whether the government could have proven all elements of the Travel Act; it is sufficient that the grand jury investigated the possibility of such a violation and that Waldemer's testimony had some bearing on one of the elements of the Travel Act. Whether Waldemer received any payment at all from the Kassly law firm or Stephen Tillery, and if so, why, bears on whether a bribery scheme existed. Therefore, Waldemer's perjury was material.

*Waldemer,* 50 F.3d at 1383.

Most of the record presented to the jury in this case dealt with the nature of Waldemer's employment over time, who paid him, why he was paid, what his union positions were at various times, for what offices he campaigned, what his expenses were in regard to those matters, etc. In view of all of this evidence, the Court finds that a rational jury could not have found that Waldemer's statements to the grand jury were not material. The Court therefore holds that the error was harmless beyond a reasonable doubt.

Since the rule announced in *Gaudin* is a new rule, as that term is used in *Teague v. Lane,* the Court finds that it was not plain error for the Court to fail to include the element of materiality in the elements instruction to the jury. This question was not before the *Gaudin* court. However, there is wording in the concurring opinion by Chief Justice Rehnquist which strongly suggests that if the issue had been before the Court, the Court would have found that it was not plain error. *Gaudin,* — U.S. at —, 115 S.Ct. at 2322.

### Conclusion

For all of the foregoing reasons, the Motion for Habeas Corpus Relief is DENIED.