UNITED STATES of America, Appellee,

v.

**Bryan McKIE, Appellant.**

No. 94–3130.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 16, 1995.

Decided Jan. 23, 1996.

---

A.J. Kramer, Washington, Federal Public Defender, argued the cause and filed the briefs, for appellant.

Molly A. Meegan, Assistant United States Attorney, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and John M. Facciola, Assistant United States Attorneys, were on the brief. Thomas C. Black and Elizabeth Trosman, Washington, Assistant United States Attorneys, entered appearances.

Before WILLIAMS, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Appellant was indicted under 21 U.S.C. § 841(a) for "possession with intent to distribute a controlled substance." Following a one-day bench trial, the district court acquitted appellant of this crime, but convicted him under the third sentence of 21 U.S.C. § 844(a) for "possession of cocaine base,"

which, according to our later decision in *United States v. Michael,* 10 F.3d 838 (D.C.Cir.1993), is *not* a lesser-included offense of the crime for which he was charged. In this appeal from the district court's denial of a writ of habeas corpus, the central question is whether *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which prohibits the retroactive application of new *constitutional* rules of criminal *procedure,* bars retroactive application of *Michael's* interpretation of the *substantive* terms of a federal *statute.* Because the principle underlying *Teague's* non-retroactivity doctrine is to apply the law in effect at the time a prisoner's conviction became final and because a court's interpretation of a substantive criminal statute generally declares what the statute meant from the date of its enactment, not from the date of the decision, the rationale of *Teague* does not preclude retroactive application of decisions such as *Michael.*

Appellant faces a second procedural hurdle, however, as he did not present at trial and on direct appeal his argument that "possession of cocaine base" is not a lesser-included offense of "possession with intent to distribute a controlled substance." Because this "procedural default" may be excusable by a colorable claim of "actual innocence," and because the record is unclear on one critical element of such a claim, we remand the record to the district court for clarification of its verdict.

## I.

Acting on a tip from a reliable informant, three police officers drove to a grocery store parking lot where they saw an alleged crack dealer talking with another man, later identified as appellant Bryan McKie. The officers watched the two men walk to the dealer's car, get in, and, with the dealer at the wheel, drive away. After driving approximately eight blocks, the dealer looked back, saw the police following, and stopped without any further prompting. While two of the officers apprehended the dealer, the other placed McKie spread-eagle against the back of the car. Noticing a plastic bag with an off-white object inside protruding from McKie's pocket and suspecting that it contained cocaine, the officer seized it and conducted a field test. When the substance tested positive for cocaine, the officer arrested McKie. Subsequent chemical analysis confirmed that the bag contained approximately thirteen grams of crack cocaine. A search of the dealer produced eighty-eight dollars, but no drugs.

The Government brought a single-count indictment against McKie under 21 U.S.C. § 841(a) (1988) for possession with intent to distribute a controlled substance. At the trial, the Government called four witnesses: the arresting officer; another police officer, who testified about the chain of custody of the drugs; a Drug Enforcement Administration chemist, who testified concerning the authenticity and weight of the crack; and a narcotics expert, who testified that "crack cocaine sells for about $100 a gram on the streets" and that the large quantity of crack cocaine found on McKie, thirteen grams or $1300 worth, was consistent with an intent to distribute, not with personal use.

Testifying in his own defense, McKie denied having ever *sold* drugs, but acknowledged that he had previously *purchased* crack, including three times from this particular dealer. He claimed, however, that he had never bought more than $50 worth, and that he went to the grocery store parking lot to buy "[t]he usual $50 worth of coke." After the dealer told him that he "didn't have a fifty available," the two "got into a car [to] go[ ] ... where [McKie] could get a fifty." According to McKie, shortly before stopping the car, the dealer "suddenly" gave him the cocaine. Immediately pocketing the packet of drugs without examining it, McKie then gave the dealer fifty dollars—two twenty-dollar bills and one ten-dollar bill. McKie claimed he did not discover that the package contained over thirteen grams of crack cocaine until his arraignment the next day.

The district court found McKie not guilty of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a), but guilty of "the lesser included offense of simple . possession of a usable amount of crack in violation of 21 U.S.C. § 844(a)." Two months later, the district court sentenced McKie to seven years and two months in prison pursuant to the third sentence of

section 844(a), which requires a prison term of five to twenty years for possession of *crack cocaine* when a defendant with no prior drug convictions possesses *in excess of five grams*. In contrast to the five-year mandatory minimum in the third sentence of section 844(a), the first sentence, which criminalizes possession of controlled substances in general, sets a maximum penalty of one year for those with no prior drug convictions. McKie's imposed prison term was thus more than seven times the permissible maximum had he been convicted under the first sentence of section 844(a). This court affirmed the conviction on grounds not at issue in this appeal. *United States v. McKie,* 951 F.2d 399 (D.C.Cir.1991).

Two years later, in a situation virtually identical to McKie's, we held in *Michael* that Congress created an independent crime of "possession of *cocaine base,*" distinct from "possession of *a controlled substance.*" Applying *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989), which held that one offense cannot be a lesser included offense of another "unless the elements of the lesser offense are a subset of the elements of the charged offense," we concluded that "possession of *cocaine base*" under the third sentence of section 844(a) is not a lesser-included offense of "possession with intent to distribute a controlled substance" under section 841(a); only "possession of a controlled substance" under the first sentence of section 844(a) is a proper lesser-included offense. *See Michael,* 10 F.3d at 839.

Arguing that his conviction of "possession of cocaine base" under the third sentence of section 844(a) was improper under *Michael,* McKie filed a *pro se* habeas motion pursuant to 28 U.S.C. § 2255. The Government responded that the non-retroactivity rule of *Teague* and the "procedural default" rule of *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), each independently barred McKie's collateral attack on his conviction. In a one-paragraph order, the district court denied McKie's motion because McKie failed to show "cause" for not having raised the lesser-included offense issue on appeal and because *Michael* "was

decided after [McKie's] conviction had become final." McKie now appeals.

## II.

■ " '[F]or near a thousand years,' " the "fundamental rule ... that has governed '[j]udicial decisions,' " is that such decisions must ordinarily "be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule." *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, —— –——, 113 S.Ct. 2510, 2516–17, 125 L.Ed.2d 74 (1993) (quoting *Kuhn v. Fairmont Coal Co.,* 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J., dissenting)) (second alteration in original). Litigants, either civil or criminal, may thus take advantage of judicial modifications in the law that are announced before they have exhausted their direct appeals. *See id.* (civil); *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (criminal).

■ The habeas writ creates a unique retroactivity problem: in contrast to civil litigants who generally may not collaterally attack a final judgment, habeas affords a convicted criminal the opportunity to attack a conviction even after it has become final. In *Teague* and its progeny, the Supreme Court considered whether a prisoner in custody could use the habeas writ to take advantage of certain judicial modifications in the law subsequent to the prisoner's conviction becoming final. Focussing solely on "new *constitutional* rules of criminal *procedure,*" the Court held that a habeas petitioner generally could not take advantage of such rules. *Teague,* 489 U.S. at 310, 109 S.Ct. at 1075 (plurality opinion) (emphases added). *Teague* thus directed habeas courts to apply the constitutional " 'law prevailing at the time a conviction became final,' " rather than any " 'intervening changes in constitutional interpretation.' " *Id.* at 306, 109 S.Ct. at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 689, 91 S.Ct. 1171, 1178, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)).

■ The case before us involves the retroactivity of a decision interpreting a *substantive* criminal *statute*, not one involving a rule of constitutional criminal procedure. This difference dictates the result in this case. According to the Supreme Court, "[a] judicial construction of a statute is an authoritative statement of what the statute meant *before* as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, —— U.S. ——, ——, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994) (emphasis added). Although we did not decide *Michael* until 1993, that case held that Congress created a separate crime for possession of cocaine base *five years earlier when it enacted the statute that added the third sentence to section 844(a)*. Given that the third sentence was a separate crime from the date the statute was enacted, the Government was required *from that date forward* to indict a defendant for that separate crime if it wished to prosecute him for it. Thus, the requirement that the Government indict a defendant separately under the third sentence of section 844(a) was, in the words of *Teague*, based on " 'the law prevailing [in 1991 when McKie's] conviction became final.' " *Teague*, 489 U.S. at 306, 109 S.Ct. at 1073 (quoting *Mackey*, 401 U.S. at 689, 91 S.Ct. at 1178 (opinion of Harlan, J.)). As in *Michael*, then, we are obligated here to apply the law as Congress enacted it. *Teague's* bar on the retroactive application of new rules of constitutional criminal procedure is thus inapplicable here. The government should therefore have indicted McKie under the third sentence of section 844(a).

We think this result is also compelled by *Davis v. United States*, 417 U.S. 333, 341–42, 94 S.Ct. 2298, 2302–03, 41 L.Ed.2d 109 (1974), where the Supreme Court held that in a section 2255 proceeding, a court must hear the merits of a prisoner's claim based upon a circuit court decision interpreting the substantive reach of a criminal statute, even though the case was decided after the prisoner's conviction had become final. Although *Davis* predates *Teague*, nothing in *Teague*, its rationale, or any subsequent Supreme Court decision undermines *Davis*. Indeed, the only significant difference between *Davis* and the case before us—that Davis had litigated his claim on direct review and thus, unlike here, had not defaulted it—is without significance to the retroactivity issue. Rather, it implicates the "procedural default" rule, the other issue in this case which we address below.

Our sister circuits, sometimes also relying on *Davis*, have likewise concluded that *Teague* does not bar the retroactive application on habeas of substantive statutory decisions such as *Michael*. *See United States v. Dashney*, 52 F.3d 298 (10th Cir.1995) (retroactive application of Supreme Court interpretation of statute prohibiting the structuring of cash transactions to evade currency reporting requirements); *Chambers v. United States*, 22 F.3d 939, 942 (9th Cir.1994) (retroactive application of Supreme Court decision invalidating child pornography statute for lack of scienter requirement); *United States v. Sood*, 969 F.2d 774, 775–76 (9th Cir.1992) (retroactive application of Ninth Circuit decision holding a bribery statute inapplicable to the territory of Guam); *United States v. McClelland*, 941 F.2d 999, 1000–01 (9th Cir. 1991) (retroactive application of Ninth Circuit interpretation of "extortion" under federal Hobbs Act); *Lomelo v. United States*, 891 F.2d 1512, 1515 n. 8 (11th Cir.1990) (retroactive application of Supreme Court interpretation of mail fraud statute); *Callanan v. United States*, 881 F.2d 229, 232 n. 1 (6th Cir. 1989) (same); *see generally* JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 25.1, at 720 n. 18 (2d ed. 1994). Although the substantive statutory decisions held retroactive in these cases differ from *Michael*—by narrowing the scope of a statute, they resulted in convictions without proof of all elements of the crime—this difference does not affect the applicability of *Michael* to this case. The same practical concern exists here: as we explain below in part III, the defendant may have been convicted of a crime he did not commit. Furthermore, the principle underlying these cases—that a decision interpreting a statute does not change the statute but rather interprets the law as enacted by the legislature—is equally applicable here.

For the contrary proposition, the Government points to the Seventh Circuit's sugges-

tion that *Teague* would bar retroactive application of a Supreme Court decision limiting the availability of restitution under the Victim Witness and Protection Act of 1982, 18 U.S.C. §§ 3579, 3580 (1982 ed. and Supp. IV). *United States v. Bennett,* 943 F.2d 738, 741 (7th Cir.1991). *But see United States v. Guardino,* 972 F.2d 682, 687 n. 7 (6th Cir. 1992) (holding the same Supreme Court decision retroactive despite *Teague* ). The Seventh Circuit, however, made no mention of *Davis,* and because the court ruled against the defendant on the merits of his claim, its discussion of *Teague* was dictum. When considering the question of retroactivity, moreover, its primary concern was the defendant's failure to have raised the issue earlier—the defendant's procedural default. *See Bennett,* 943 F.2d at 741 ("a defendant should not be allowed, years later, to take advantage of a change in statutory construction *that he was free to argue on direct appeal* ") (emphasis added).

### III.

■ This then brings us to the question whether McKie "procedurally defaulted" his *Michael* claim by having failed to raise it at trial or on direct appeal. When prisoners commit "procedural defaults," we may hear the merits of their claims on habeas only if they "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991).

■ We have no doubt that McKie suffered prejudice. Under *Michael,* he would have been sentenced to prison for at most one year—six years and two months less than the imposed sentence. We are not persuaded, however, that he has shown "cause" for failing to raise this argument earlier. His reliance on *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), is misplaced, as *Reed* requires the claim to be so "novel that its legal basis is not reasonably available to counsel." *Id.* at 16, 104 S.Ct. at 2910. The argument that ultimately prevailed in

*Michael,* based on an interpretation of a statute, simply does not meet this standard.

■ McKie also argues that failure to consider the merits of his claim would result in a "miscarriage of justice." Although the Supreme Court has not defined the phrase "miscarriage of justice" in other habeas contexts, *see Reed v. Farley,* —— U.S. ——, ——, 114 S.Ct. 2291, 2297, 129 L.Ed.2d 277 (1994); *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979); *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), it has articulated the standard a prisoner must meet to demonstrate a "miscarriage of justice" to excuse a procedural default: a prisoner must show that an error "has probably resulted in the conviction of one who is actually innocent," *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). We think McKie may satisfy this standard.

McKie's defense to the "possession with intent to distribute" charge was that he simply did not know how much crack was in the package. His theory was that the drugs belonged to the dealer, that he was just a buyer, and that he intended to purchase fifty dollars worth of crack—which, according to the uncontroverted testimony of the Government's expert, would have amounted to approximately one-half gram, significantly less than necessary to trigger the statute. According to McKie, once the dealer saw the police following the car, the dealer tricked him by handing him the thirteen-gram package immediately before stopping. This, claims McKie, is why he had the drugs when the police arrived and why he had no idea how much crack was in the package. Two of the police officers corroborated McKie's theory: one testified that while following the car, he saw the dealer hand something to McKie a few blocks before the car stopped; the other testified that he saw nothing in McKie's pocket when McKie got into the car at the grocery store parking lot. Further supporting McKie's theory was the fact that the driver of the car, a known drug dealer, had no drugs and only eighty-eight dollars when arrested—including two twenty-dollar bills and one ten-dollar bill, precisely the

denominations that McKie testified to having given him in the car. As to whether McKie knew how much crack was in the package, the Government offered no evidence at all. The only direct evidence was McKie's own testimony that he did not discover the package's quantity until the next day when he arrived in court. Had the district court disbelieved McKie, it would likely have convicted him of "possession with intent to distribute," since the expert testified that thirteen grams is consistent with "intent to distribute," not with simple possession.

The question, then, is whether McKie's defense, based on lack of knowledge of the amount of crack he had, is a claim of "actual innocence" of the crime described in the third sentence of section 844(a). If knowledge of quantity is an element of that crime, we think McKie's defense would amount to such a claim. *Michael,* however, did not address the question whether knowledge of quantity is an element of the crime, requiring proof beyond a reasonable doubt at trial, or simply a sentencing enhancement, requiring proof by a preponderance of the evidence. *See Michael,* 10 F.3d at 842. At this time, we need not decide that issue either. For one thing, the parties did not brief the issue and we generally hesitate to decide nonjurisdictional questions without briefing. Moreover, the district court made no finding, either at trial or at sentencing, as to whether McKie knew how much crack he possessed. Indeed, when announcing the verdict, the district court specifically stated that "[t]he standard [jury] instruction ... does not require that anybody knows what the quantity was." At sentencing, the district court stated that it felt bound by the finding at trial that the package contained thirteen grams and made no finding on the question of McKie's knowledge of that quantity.

We therefore remand the record to the district court to determine whether McKie knew that he had a quantity of crack in excess of five grams and, if so, to state by what standard of proof the court so finds— whether beyond a reasonable doubt or by a preponderance. If the district court concludes that the Government proved McKie's knowledge of the quantity beyond a reasonable doubt, we will have no need to consider the "knowledge of quantity" issue further, as McKie would not have a claim of "actual innocence" even if knowledge of the quantity were an element of the crime. However, if the district court does not find beyond a reasonable doubt that McKie knew the actual quantity, and if knowledge of the quantity is an element of the crime, McKie would have a colorable claim of "actual innocence."

Because we remand the record for limited purposes, rather than remanding the entire case, we retain jurisdiction pending the district court's resolution of the "knowledge of quantity" issue. *See* D.C.Cir.R. 41(b); *see also United States v. Manner,* 887 F.2d 317, 327 (D.C.Cir.1989).

*So ordered.*

## ORDER

In accordance with the opinion issued this day in *United States v. McKie,* No. 94–3130, it is

**ORDERED** that the record in this appeal be remanded to the United States District Court for the District of Columbia for further proceedings consistent with the opinion issued this day. Upon completion of such proceedings, the Clerk of the United States District Court for the District of Columbia shall promptly transmit the record back to this court. Consistent with D.C.Circuit Rule 41(b), this court retains jurisdiction over the case pending such proceedings. After the district court has certified its finding to this court, this court shall supplement the record to include the district court's determination and any further materials submitted by the parties to the district court. After such a filing, the clerk of this court shall set a schedule for supplementary briefing, including, if necessary, the "knowledge of quantity" issue, and the matter will be returned to this panel for disposition. *See United States v. Manner,* 887 F.2d 317, 323–24 & n. 5 (D.C.Cir.1989).