**Mark WALDEMER, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 96–1119.**

United States Court of Appeals, Seventh Circuit.

Argued May 31, 1996.

Decided Oct. 21, 1996.

As Amended on Denial of Rehearing Jan. 16, 1997.

Douglas B. McKechan, Mark B. Moran, argued, McKechan & Moran, Granite City, IL, for Petitioner–Appellant.

W. Charles Grace, Office of the U.S. Attorney, Criminal Div., Fairview Heights, IL, Frank J. Marine, argued, Robert C. Blume, U.S. Department of Justice, Organized Crime and Racketeering Section, Washington, DC, for Respondent–Appellee.

Before BAUER, FLAUM and KANNE, Circuit Judges.

PER CURIAM.

On December 9, 1993, at the end of a three-day trial, a jury found Mark Waldemer guilty of making a "false material declaration" to the grand jury in violation of 18 U.S.C. § 1623. One of the elements of this offense that the government was required to prove beyond a reasonable doubt was that Waldemer's declaration was material to the grand jury's investigation. Because at the time of trial it was well settled in this circuit that the existence of materiality was a question of law for the court to decide, *see, e.g., United States v. Anderson,* 798 F.2d 919, 926 (7th Cir.1986), the issue of materiality was not submitted to the jury for its determination. After the verdict, Waldemer appealed to this court, and we affirmed. *United States v. Waldemer,* 50 F.3d 1379 (7th Cir. 1995). In the opinion announcing our decision, we found it necessary to address the question of the materiality of Waldemer's statements to the grand jury. We determined as a matter of law that Waldemer's false statements were material. *Id.* at 1382–83. Waldemer filed a petition for rehearing and suggestion for rehearing en banc, which we denied. He then filed a petition for a writ of certiorari, which the Supreme Court denied on June 19, 1995.

On the same day the Supreme Court denied Waldemer's petition for certiorari, however, it issued *United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995), holding that the Sixth Amendment guarantees a criminal defendant's right to have a jury decide each and every element of the offense with which he is charged, specifically including the issue of materiality. *Id.* Waldemer then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, arguing that (among other reasons) *Gaudin* required a reversal of his

conviction. However, the district court determined that "a rational jury could not have found that Waldemer's statements to the grand jury were not material," and therefore held "that the error was harmless beyond a reasonable doubt" and denied Waldemer's habeas petition. Waldemer now .appeals to this court for review of the district court's ruling.

■ As a result of *Gaudin,* the district court's decision not to submit the question of materiality to the jury was rendered reversible error. *See United States v. Ross,* 77 F.3d 1525, 1539 (7th Cir.1996). Waldemer did not raise this issue either at trial or on direct appeal. Where a defendant fails to raise a claim at trial or on direct appeal, he may not proffer it as a ground for collateral attack unless he demonstrates (1) good cause for failing to raise the error and (2) that the alleged error was actually prejudicial. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982); *Bischel v. United States,* 32 F.3d 259, 263 (7th Cir.1994).

■ With respect to the first requirement, there was good cause for not raising as error, either at trial or on direct appeal, the district court's decision not to submit the question of materiality to the jury because *Gaudin* was not decided until the day Waldemer's petition for writ of certiorari was denied. Prior to that date, the settled law of nearly every circuit dictated that materiality was a question for the district court, not the jury, to decide. *See Ross,* 77 F.3d at 1538 & n. 2 (citing *United States v. Gaudin,* 28 F.3d 943, 955 (9th Cir.1994) (Kozinski, J., dissenting) (collecting cases)).

The government offers *Engle v. Isaac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982), for the proposition that the futility of asserting a federal constitutional claim does not amount to cause for failing to raise an objection at trial. *Engle,* however, concerned a defendant's failure to raise a federal constitutional objection in *state* court due to settled *state* precedent. *Id.* The

Court explained: "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." *Id.* This principle—which preserves a state court's right to rethink a decision that may conflict with federal constitutional law—is inapposite in cases, like this one, where the federal defendant faces seemingly intractable *federal* precedent that his constitutional objection would be futile. To hold otherwise would invite countless frivolous objections at federal trials by defendants fearful of being denied the opportunity for future collateral attack should the Supreme Court later create a new constitutional rule. Thus, Waldemer has demonstrated the requisite cause.

■ As for prejudice, the district court found that not submitting the question of materiality to the jury was harmless because no rational jury could have ever determined that Waldemer's statements to the grand jury were immaterial. However, we recently rejected this reasoning in *Ross,* 77 F.3d at 1540.[1] There, we explained that "[t]he hypothetical rational jury is irrelevant for appraising the prejudice of an error in a criminal jury trial." *Id.* This is so because "[t]he Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty." *Sullivan v. Louisiana,* 508 U.S. 275, 280, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). Accordingly, "[h]armless error analysis in the appeal of a criminal case asks 'not whether, in a trial that occurred without the error,, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" *Ross,* 77 F.3d at 1540 (quoting *Sullivan,* 508 U.S. at 279, 113 S.Ct. at 2081) (emphasis in *Sullivan* ).

■ Applying this standard of analysis, we determined in *Ross* that the district court's

---

1. The district court's ruling was issued on January 3, 1996. Our decision in *Ross* came 30 days later on February 2, 1996. Thus the district court did not have the benefit of the *Ross* ratio-

nale at the time it ruled. This is another example of the untoward timing that has plagued this case.

decision not to submit the materiality of the defendants' statements to the jury for it to decide was prejudicial, noting that "[t]his court has held that, in general, failure to submit an essential element of a criminal offense to the jury for determination cannot be harmless; it is necessarily prejudicial." 77 F.3d at 1540 (citing *United States v. Shetterly*, 971 F.2d 67, 73 (7th Cir.1992); *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988)). Now this is not to say that failure to submit an essential element of a criminal offense to the jury can *never* be harmless— i.e., that such an error is unamenable to harmless error review. If the circumstances of the case were such that the jury, in rendering its verdict as to another count or offense, had by that very decision necessarily also found the existence of the element in question beyond a reasonable doubt, the failure to submit that element to the jury would be harmless because the jury would have already decided that issue. Our cases hold only that if an element of an offense is not actually found by a jury, appellate court musings as to the actions of a hypothetical rational jury cannot render such an error harmless.

Here, the government cannot demonstrate that Waldemer's trial jury actually determined that the statements were material; it has merely argued, as the district court decided, that the jury could not have reasonably arrived at any other conclusion. But the element of materiality was never even mentioned in the jury's presence, and therefore the proposition that the government urges upon us is no more than an inference that the jury actually found that materiality was established beyond a reasonable doubt. We must, therefore, find that the decision not to submit the issue of materiality to the jury was prejudicial, and thus Waldemer has made the requisite showing of cause and prejudice necessary to allow him to raise the district court's *Gaudin* error as a ground for collateral attack.

■ But, the government notes that in *Ross*, despite our finding that the district court's error had been prejudicial, we held that the error did not warrant reversal under the plain error standard of review reasoning:

Here, the government presented evidence sufficient to convince any rational factfinder that the defendants' false statements were material. In fact, the issue of materiality was not even significantly disputed by the defendants at trial. Furthermore, the district court acted properly according to established precedent when it decided that the statements were material, rather than allowing the jury to come to the same obvious conclusion. It would be an unnecessary waste of judicial resources to retry this case based on the district court's failure to submit overwhelming evidence of a barely disputed issue to the jury, especially given that the district court was following settled law at the time. As a result, we do not find that the district court's error brings into question the fairness, integrity, or reputation of judicial proceedings, and we decline the invitation to grant Ross a new trial.

77 F.3d at 1540–41. The government argues that the same is true of this case, and that because we would not have reversed Waldemer's conviction under the plain error standard had he raised it on direct appeal, we should decline to reverse on collateral review.

However, although there are similarities, the government overlooks the defining difference between this case and *Ross*. In *Ross*, the district court, in accordance with existing precedent, made an explicit finding that the defendants' statements "were 'material' and instructed the jury to consider the element of materiality to be established as a matter of law." *Id.* at 1538. Here, on the other hand, the jury was unaware that materiality was an element of the offense; the district court made no findings on the issue of materiality; and therefore, the jury received no instruction that the materiality of Waldemer's declarations before the grand jury had been established as a matter of law.

It appears that a variety of factors lead to this result. A recounting of the discussions of the materiality issue that are of record helps shed some light on how this occurred. Waldemer was originally charged in a 12–count indictment. The first eleven counts related to mail fraud and Travel Act viola-

tions. Count 12 alleged false material declaration to the grand jury. On December 7, 1992, while all twelve counts remained pending, Waldemer filed a motion to dismiss the indictment including a claim that materiality was lacking as to Count 12. The district court, on January 15, 1993, held a wide-ranging hearing on a variety of motions. After a brief argument on Waldemer's motion to dismiss Count 12 because of lack of materiality, the court stated that the motion was "denied" (January 15, 1993 transcript at page 142).

Eight months later on September 2, 1993, at the request of the government, the court dismissed Counts 1 through 11 of the Waldemer indictment. Shortly thereafter on October 1, 1993, Waldemer again moved to dismiss the remaining charge of perjury claiming that the declarations he made to the grand jury were not material to its investigation of mail fraud and Travel Act violations. This second motion to dismiss was decided on October 15, 1993. With regard to Waldemer's claim of lack of materiality the district court stated:

> Well, the arguments that defense counsel is making are certainly not frivolous, and in fact they may have great weight with the jury. It's my belief, based on my present understanding of the law, that in this circuit it would be wrong for me to dismiss this case at this point. I do not believe that I have—I'm talking about the issue of materiality. I do not believe that I have, under these circumstances, could properly exercise the authority to dismiss the case.
>
> I am satisfied, reading the questions, that they were material to the, at least in the broad sense, to the scope of the investigation that was being conducted by the grand jury. Whether any particular question led to a specific reference later into a county of an indictment that was returned, I think, is completely irrelevant. Case law is very clear that that's not necessary. **At the end of the government's case, and if we get to that point at the end of all of the evidence in the trial, the Court, of course, will make a further finding on this point, and it is certainly subject to change based upon my more in-depth understanding of the context of all of this, having had the benefit of hearing what the evidence is specifically, but I am going to deny the motion at this point.**

October 15, 1993 transcript, pp. 29–30 (emphasis added).

The issue of the materiality of Waldemer's declarations before the grand jury next surfaced on the record with regard to the government's motion *in limine* at a hearing immediately prior to the commencement of the trial on December 6, 1993. The government sought to prohibit the jury from hearing any reference to the eleven counts of mail fraud and Travel Act violations dismissed at its request. When the court asked Waldemer if he had any objections to the government's motion *in limine* his counsel responded:

> Judge, we have reviewed what we think the case law is and we see no case law that would support the discussion in any manner. I would ask the Court in light thereof that there not be any discussion before the jury about any of the other charges, even from the Government. **The only issue as to mention of the indictment or the counts that arose would be one of materiality for the Court. The Court can certainly take that into consideration in its separate consideration when that argument takes place,** but I see no purpose in telling the jury, by the Government or by the defense, even a mention of whether an indictment came from these questions one way or another. It's either these questions were answered honestly or they were not, period. This jury could not or should not be told in any manner what emanated therefrom and I would ask that the Court's order encompass the fact the Government not in any way indicate whether an indictment came forward or not. There's no basis for the jury to be considering that.

December 6, 1993 transcript, pp. 2–3 (emphasis added).

It appears that the only (on the record) discussion of the materiality of Waldemer's declarations that took place during the

course of the trial occurred following the close of all the evidence. At the instruction conference on December 8, 1993, the following discussion took place concerning the charge setting forth the elements of 18 U.S.C. § 1623, false declarations before a grand jury:

MR. KELLY [For the Government]: I believe you had requested the Government to type up two versions of 14, A and B, one with three elements and one with two.

THE COURT: What did either side find out about this materiality thing?

MR. KELLY: Your Honor, I don't believe the Government has found any specific case law indicating that it be instructed as two or three. The Government would simply request the pattern instruction be given as indicated in the Seventh Circuit Pattern Instructions.

THE COURT: What does that mean?

MR. KELLY: We want 14A plus 15.

December 8 & 9, 1993 transcript, p. 91. Unfortunately, none of the written instructions tendered or given are part of the record. An unsigned note attached to the transcribed instructions read by the court reads: "Unable to locate jury instructions, this is what was read in court." It is clear, however, from the transcribed instructions and the comments of the court and counsel that the government's proposed instruction 14A was the Seventh Circuit's pattern instruction setting forth the elements of false declarations before a grand jury. As applicable here, tendered instruction 14A would have read:

To sustain the charge of false declaration before a grand jury or in a court, the government must prove the following propositions:

First, that the defendant, while under oath, testified falsely before a United States grand jury, as charged in the indictment;

**Second, that the defendant's testimony related to some material matter;** and

Third, that the defendant knew the testimony was false.

If you find from your consideration of all the evidence that each of these proposi-

tions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Seventh Circuit, Federal Criminal Jury Instructions Vol. II, at 106 (West ed. 1984) (emphasis added). It is equally apparent that the government's tendered instruction 15 was the next and related pattern jury instruction concerning materiality. Again, as applicable, that instruction would have read:

**The 'materiality' of the matter involved in the alleged false testimony is not a matter with which you are concerned, but rather is a question for the court to decide. You are instructed that the questions asked the defendant as alleged, constituted material matters in the grand jury proceedings.**

Seventh Circuit, Federal Criminal Jury Instructions Vol. II, at 107 (West ed. 1984) (emphasis added).

The alternate elements instruction 14B was identical in format to government's 14A, but eliminated was the language that set forth the requirement that a defendant's testimony must be related to some material matter. Continuing with the instruction conference after the government requested that its tendered 14A and 15 be given, the court asked for Waldemer's position. The following dialogue ensued:

MR. GOMRIC [for Waldemer]: I would recommend to the Court 14B since there is no consideration for the jurors as to the materiality and any mention of it again creates the possibility of guess, conjecture, speculation on their part, and just no mention one way or another avoids the whole possibility.

THE COURT: Let me just ask the Government, in looking at what you did, are you telling the Court you can't find any law that says there's a specific reason to do it other than the fact it's—I mean it's just in the pattern jury instructions?

MR. KELLY [for the Government]: I apologize, Your Honor. That's all I can go on. I don't have another case that indicates what the appropriate way—

THE COURT: There's no discussion in that instruction of the need to include the element of materiality?

MR. KELLY: I do not have a copy of it here. It's—I found it in a larger compilation of pattern instructions.

THE COURT: My view on this is that in the absence of any attempt on the part of the defense to argue materiality, either directly or by implication, I don't believe that this really assists the jury in any way in making their decision. If the Government has some specific reason to assert the need for it in this case other than the fact that it's in the pattern jury instructions, I will certainly consider that. Otherwise, it's my view, since it is the Seventh Circuit's position that this is something to be ruled on by the Court and the defense has—there's no indication either in opening statement or in any of the questioning in this case that the defense has made or will make any effort to argue his answers were immaterial, then I'm going to go with 14B. So I will show 14A as rejected. We'll show 14B as given. Do you want that over objection?

MR. KELLY: Yes.

THE COURT: Over objection.

MR. KELLY: I believe that would mean although we would be offering 15, you would [be] rejecting that as well.

THE COURT: That's correct. I will reject 15. This particular instruction, I mean the defense is on notice that if you were to in your argument either directly or by implication suggest that his answers were not material in some fashion—I'm not saying you would use that word—but if you were to attempt to do that, then I would reconsider this after the arguments....

December 8 & 9, 1993 transcript, 91–93. It is apparent from the foregoing discussion

that this is the point at which things went off track.[2] With the granting of the government's motion *in limine* (prohibiting any reference to the grand jury's investigation and indictment of Waldemer on mail fraud and Travel Act violations), Waldemer's counsel was in no position to present evidence from the grand jury's investigation to show that Waldemer's declarations before it were not material. Moreover, Waldemer did not wish to raise the specter of other criminal charges being made against him. Thus, though Waldemer had not conceded that his declarations were material, in the absence of the submission of any evidence at trial to specifically show lack of materiality, the district judge concluded that its existence (a matter to be determined by the court) was no longer at issue. As a result of a chain of events that commenced with the granting of the motion *in limine*, materiality ceased to be an element to be resolved during the course of the trial.

As we have seen earlier the experienced district judge was aware that a finding of whether or not materiality existed as a matter of law was necessary, indicating that it would be made at the close of the evidence. Unfortunately, the instruction that would have prompted the district judge to make such a finding—government's tendered 15—was rejected virtually as an afterthought, and its key language—You are instructed that the questions asked the defendant as alleged constituted material matters in the grand jury proceedings—was never heard by the jury.

In its § 2255 review, the district court forthrightly acknowledged that it "did not explicitly make a finding of materiality ... and should have done so...." The court, however, then went on to hold that its finding of materiality was implicit and that on direct appeal we had found the existence of materiality.

On appeal, we did fill in the missing finding of law, holding that "Waldemer's perjury was material." *Waldemer,* 50 F.3d at 1383.

---

2. The government's research regrettably did not bring to light, for the benefit of the district court, the case of *U.S. v. Scop,* 940 F.2d 1004, 1011–12 (7th Cir.1991). *Scop* specifically approved as "a proper statement of the law" the 7th Circuit pattern jury instruction (government's 14A) rejected at the instruction conference.

However, in light of the subsequent *Gaudin* decision, our determination of a question of law was transformed into a factual finding—a finding we should not have made as an appellate court. As a result, Waldemer has been convicted and sentenced for violating 18 U.S.C. § 1623 without any fact finder ever having determined beyond a reasonable doubt that his declarations to the grand jury were material to its investigation. As we are instructed by *Gaudin*, the Sixth Amendment entitles Waldemer to a jury determination of whether the government can meet its burden of proof as to every essential element of the offense, including materiality. Unlike *Ross*, materiality was not a part of Waldemer's trial. In light of *Gaudin*, we, as well as the district court, erred in our treatment of materiality. Initially through oversight, and then through unfortunate timing, this case has produced a result that now brings into question the fairness of the proceedings and requires that Waldemer's conviction be vacated. *See Ross*, 77 F.3d at 1540–41.

 The judgment of the district court denying relief under 28 U.S.C. § 2255 is REVERSED, Waldemer's petition for a writ of habeas corpus is GRANTED, his conviction for violating 18 U.S.C. § 1623 is VACATED, and this case is REMANDED to the district court for new trial or other disposition.[3]

---

3. Shortly after we decided this case, the Supreme Court issued *California v. Roy*, —— U.S. ——, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (per curiam), which solidified the harmless error standard for trial errors upon collateral review. The Court ruled that this standard was "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Roy*, —— U.S. at ——, 117 S.Ct. at 338 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). In light of *Roy*, the government asserts in its petition for rehearing that we employed the wrong standard for reviewing harmless error. We ultimately reject the government's legitimate argument, but believe that a brief word is necessary to clarify our opinion.

We determined that the *Gaudin* error present in Waldemer's trial was "necessarily prejudicial." Relying on *Roy*, however, the government takes issue with this determination by claiming that we applied an improper harmless error standard in finding that "the government cannot demonstrate that Waldemer's trial jury actually determined that the statements were material." The government is correct in asserting that *Roy* expressly rejected a harmless error standard using nearly identical language. *See Roy*, —— U.S. at ——, 117 S.Ct. at 338. Our statement that an error could be harmless if a jury's verdict "necessarily also found the existence of the element in question beyond a reasonable doubt," however, did not adopt a standard for reviewing harmless error. Rather, it only described the very narrow occasion when a court's failure to submit an essential element of a criminal offense to a jury could be considered harmless. *See Roy*, —— U.S. at ——, 117 S.Ct. at 339–40 (Scalia, J., concurring) ("The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding this point as well.").

Moreover, our case differs fundamentally from *Roy* because the "necessarily prejudicial" *Gaudin* error (*i.e.*, the failure to submit an essential element (materiality) of a crime to the jury) constitutes a "structural error" and not a "trial error." *See United States v. Wiles*, 102 F.3d 1043, 1060–61 (10th Cir.1996) (en banc) (finding *Gaudin* error to be "structural error"); *see also Roy*, —— U.S. at ——, 117 S.Ct. at 339–40 (Scalia, J., concurring). Because our case did not involve a "trial error," and because "structural error" transcends harmless error review, *see Sullivan v. Louisiana*, 508 U.S. 275, 278–82, 113 S.Ct. 2078, 2080–83, 124 L.Ed.2d 182 (1993), our failure to apply formally the standard used in *Roy* and *Brecht* is without consequence.

Finally, we want to further clarify that this decision does not impair our ruling in *United States v. Ross*, 77 F.3d 1525 (7th Cir.1996). *Ross* involved plain error analysis whereby we found the *Gaudin* error to be "necessarily prejudicial," but nonetheless used the discretion afforded us on plain error review to affirm the conviction. In that regard, we concluded that the error did not call "into question the fairness, integrity, or reputation of [the] judicial proceedings." *See Ross*, 77 F.3d at 1540–41; *accord Wiles*, 102 F.3d at 1066–72 (10th Cir.1996) (Lucero, J., concurring in part and dissenting in part). This case similarly involved our automatic finding of prejudice. *Unlike Ross*, however, we determined that the "oversight" and "unfortunate timing" that led to the outcome of this case "brings into question the fairness of the proceedings." Thus, under either harmless error review (which would require us to automatically vacate the conviction), or under plain error review, we must vacate Waldemer's conviction.