United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued March 16, 1998 Decided April 14, 1998

 No. 97-3023

 United States of America, 

 Appellee

 v.

 David M. Dale, 

 Appellant

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 90cr00027-01)

 Jeffrey S. Parker argued the cause for the appellant.

 Stuart G. Nash, Assistant United States Attorney, argued 
the cause for the appellee. Mary Lou Leary, United States 
Attorney at the time the brief was filed, and John R. Fisher, 
Mary Patrice Brown, Thomas R. Eldridge and Mark H. 
Dubester, Assistant United States Attorneys, were on brief.


 Before: Wald, Silberman and Henderson, Circuit Judges.

 Opinion for the court filed by Per Curiam.

 Concurring opinion filed by Circuit Judge Henderson.

 Per Curiam: Appellant 
David M. Dale invokes the federal habeas corpus statute, 28 
U.S.C. s 2255,1 to challenge his fraud and conspiracy convic-
tions on the ground that under United States v. Gaudin, 515 
U.S. 506 (1995), issued after Dale's convictions became final, 
the district court erroneously decided as a question of law, 
rather than remitting to the jury as a question of fact, the 
materiality of misrepresentations for which Dale was convict-
ed of violating 18 U.S.C. s 1001.2 Because Dale failed either 

__________
 1 Section 2255 provides in relevant part:

 Federal custody; remedies on motion attacking sentence

 A prisoner in custody under sentence of a court established by 
 Act of Congress claiming the right to be released upon the 
 ground that the sentence was imposed in violation of the 
 Constitution or laws of the United States, or that the court was 
 without jurisdiction to impose such sentence, or that the sen-
 tence was in excess of the maximum authorized by law, or is 
 otherwise subject to collateral attack, may move the court 
 which imposed the sentence to vacate, set aside or correct the 
 sentence.

28 U.S.C. s 2255.

 2 Section 1001 provides in relevant part:

 (a) Except as otherwise provided in this section, whoever, in 
 any matter within the jurisdiction of the executive, legislative, 
 or judicial branch of the Government of the United States, 
 knowingly and willfully--

 (1) falsifies, conceals, or covers up by any trick, scheme, or 
 device a material fact;

 (2) makes any materially false, fictitious, or fraudulent 
 statement or representation; or

 (3) makes or uses any false writing or document knowing the 
 same to contain any materially false, fictitious, or fraudulent 
 statement or entry;



to raise the alleged error during his criminal prosecution or 
to establish in this proceeding "cause and prejudice" to 
excuse his procedural default, we conclude that he is not 
entitled to the relief he seeks.

 The details of Dale's charged offenses and of his trial are 
set out at length in United States v. Dale, 991 F.2d 819 (D.C. 
Cir.), cert. denied, 510 U.S. 1030 (1993), (Dale I ) and it is 
unnecessary to repeat them here. At the end of the day the 
jury convicted Dale of conspiracy (18 U.S.C. s 5371) (count 1) 
and of six substantive offenses: subscribing to a false tax 
return (26 U.S.C. s 7206(1)) (count 2); attempted tax evasion 
(26 U.S.C. s 7201) and aiding and abetting therein (18 U.S.C. 
s 2) (count 4); wire fraud (18 U.S.C. s 1343) and aiding and 
abetting therein (18 U.S.C. s 2) (count 5); concealing facts by 
trick, scheme and artifice (18 U.S.C. s 1001) and aiding and 
abetting therein (counts 7 and count 9); and making false 
statements (18 U.S.C. s 1001) and aiding and abetting therein 
(18 U.S.C. s 2) (count 10). Before deliberations the judge 
had expressly instructed the jury that the misrepresentations 
alleged in violation of section 1001 (counts 7, 9 and 10) "are 
material." App. A82. On July 15, 1991 the trial judge sen-
tenced Dale to 41 months' imprisonment on the conspiracy 
count and a concurrent 30-month sentence on each of the 
other 6 counts, to be followed by 2 years' supervised release. 
The judge also imposed a $350 special assessment, a $675,000 
fine and a $58,000 assessment for incarceration costs. In an 
opinion issued April 6, 1993 we affirmed Dale's convictions 
and sentence with one exception--we reversed the count 2 
conviction of subscribing to a false tax return, which merged 
with the count 4 conviction of attempted tax evasion, and 
remanded for appropriate resentencing. See Dale I. The 
United States Supreme Court denied Dale's petition for cer-
tiorari on December 3, 1993. Dale v. United States, 510 U.S. 
1030 (1993). The district court resentenced Dale on August 

__________
 shall be fined under this title or imprisoned not more than 5 
 years, or both.

18 U.S.C. s 1001(a) (emphasis added).


24, 1994 in accordance with our remand. No appeal was 
taken from the new sentence.

 On June 19, 1995 the United States Supreme Court issued 
its decision in United States v. Gaudin, holding that because 
materiality is an element of a section 1001 offense the Fifth 
and Sixth Amendments to the United States Constitution 
require that a conviction thereof rest on a jury finding of 
materiality. On February 8, 1996 Dale filed a motion in the 
district court for collateral relief from his convictions pursu-
ant to 28 U.S.C. s 2255 on the ground that under Gaudin the 
trial judge usurped the jury's function by ruling as a matter 
of law that the misrepresentations alleged in counts 7, 9 and 
10 were material. The district court denied the relief sought, 
concluding that Gaudin established a new rule of constitu-
tional procedure that should not be retroactively applied to 
criminal convictions already final at the time the decision 
issued. Without reaching the retroactivity issue, we affirm 
the district court on the ground that Dale is procedurally 
barred from arguing Gaudin error in a habeas proceeding. 
Having failed to argue in his criminal prosecution that materi-
ality was a jury issue, either before the district court or on 
appeal, Dale now "must show both (1) 'cause' excusing his 
double procedural default, and (2) 'actual prejudice' resulting 
from the errors of which he complains." United States v. 
Frady, 456 U.S. 152, 167-68 (1982). To establish "actual 
prejudice," he "must shoulder the burden of showing, not 
merely that the errors at his trial created a possibility of 
prejudice, but that they worked to his actual and substantial 
disadvantage, infecting his entire trial with error of constitu-
tional dimensions." Id. at 170.3 Dale has failed to meet his 
burden.4

__________
 3 It is not clear whether the showing of prejudice required to cure 
procedural default is identical to--or greater than--the showing 
required to establish ineffective assistance of counsel, namely, that 
"there is a reasonable probability that, but for [the errors], the 
result of the proceeding would have been different," Strickland v. 
Washington, 466 U.S. 668, 693 (1984) (emphasis added). See Unit-
ed States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992); Freeman v. 
Lane, 962 F.2d 1252, 1258-59 & n.5 (7th Cir. 1992); John C. 
Jeffries, Jr. & William J. Stuntz, Ineffective Assistance and Proce-


 The three section 1001 convictions were based on Dale's 
failure to disclose interests in and relationships with foreign 
corporations on forms he filed with the Department of De-
fense to obtain security clearance. See Dale I, 991 F.2d at 
828-29. In each case the filed form specifically requested the 
information withheld and Dale has suggested no facts or 
theory to rebut the district judge's legal conclusion that the 
charged nondisclosures were material to the Department's 
decision whether to grant clearance. Nor did Dale--or his 
co-defendant charged with the same nondisclosures--attempt 
to challenge the judge's materiality conclusion on direct ap-
peal. In the absence of any basis for finding Dale's misrepre-
sentations were not material, we cannot say that the judge's 
failure to submit materiality to the jury "worked to [Dale's] 
actual and substantial disadvantage." The failure therefore 
was not prejudicial.

 Dale asserts that a Gaudin error "cannot be harmless, 
because it requires speculation about what a hypothetical jury 
could have decided, had it been allowed to do so." Reply Br. 
at 17 (citing Waldemer v. United States, 106 F.3d 729, 731-32 
(7th Cir. 1997)). We disagree. In Johnson v. United States, 
117 S. Ct. 1544, 1550 (1997), the Supreme Court held that the 
trial judge's Gaudin error was not "plain error"--so as to 
justify reversal on direct appeal in the absence of an objection 
made at trial--where "the evidence supporting materiality 
was 'overwhelming,' materiality was "essentially uncontro-
verted" and the appellant "presented no plausible argument" 

__________
dural Default in Federal Habeas Corpus, 57 U. Chi. L. Rev. 679, 
684-85 n.25 (1990). Circuit precedent suggests that habeas preju-
dice may require a greater showing, namely, "by a preponderance 
of the evidence, that the outcome of his trial would have been 
different but for the errors in question." See United States v. Saro, 
24 F.3d 283, 287 (D.C. Cir. 1994) (emphasis added). In any event, 
the standard has not been satisfied here.

 4 Because we find no showing of prejudice we need not decide 
whether Dale has satisfied the "cause" prong of the default stan-
dard.


that the charged misrepresentation was not material. We 
can only conclude that the same error can in similar circum-
stances be nonprejudicial under the habeas standard which 
requires a "showing of prejudice" that "is significantly great-
er than that necessary under 'the more vague inquiry sug-
gested by the words "plain error." ' " See Murray v. Carrier, 
477 U.S. 478, 493 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 
135 (1982)); see also Henderson v. Kibbe, 431 U.S. 145, 154 
(1977) ("The burden of demonstrating that an erroneous 
instruction was so prejudicial that it will support a collateral 
attack on the constitutional validity of a state court's judg-
ment is even greater than the showing required to establish 
plain error on direct appeal."); United States v. Saro, 24 F.3d 
283, 287 (D.C. Cir. 1994) (quoting Murray v. Carrier, 477 
U.S. at 494).5

 Finally, Dale argues--belatedly and improvidently in a 
post-argument letter filed with the court on March 20, 1998 
purportedly pursuant to Local Rule 28(j) 6--that, even if he 

__________
 5 In Waldemer v. United States, 106 F.3d 729 (7th Cir.1996), on 
which Dale relies, the Seventh Circuit concluded a Gaudin error 
was necessarily prejudicial because the government could not "dem-
onstrate that [the petitioner's] trial jury actually determined that 
the statements were material," stating: "Our cases hold ... that if 
an element of an offense is not actually found by a jury, appellate 
court musings as to the actions of a hypothetical rational jury 
cannot render such an error harmless." 106 F.3d at 732. The 
Supreme Court's subsequent decision in Johnson establishes that, 
to the contrary, an actual jury finding of materiality is not neces-
sary to render a Gaudin error harmless.

 6 Rule 28(j) provides:

 When pertinent and significant authorities come to the atten-
 tion of a party after the party's brief has been filed, or after 
 oral argument but before decision, a party may promptly 
 advise the clerk of the court, by letter, with a copy to all 
 counsel, setting forth the citations. There shall be a reference 
 either to the page of the brief or to a point argued orally to 
 which the citations pertain, but the letter shall without argu-
 ment state the reasons for the supplemental citations. Any 
 response shall be made promptly and shall be similarly limited.


has not demonstrated prejudice he is entitled to collateral 
relief to prevent a "miscarriage of justice." It is true that a 
showing of "fundamental miscarriage of justice" may excuse 
default when cause and prejudice are not shown. See Schlup 
v. Delo, 513 U.S. 298 (1995); United States v. McKie, 73 F.3d 
1149 (D.C. Cir. 1996). The petitioner must then "show that 'a 
constitutional violation has probably resulted in the conviction 
of one who is actually innocent,' " that is, that "it is more 
likely than not that no reasonable juror would have convicted 
him" but for the error. Schlup, 513 U.S. at 326 (quoting 
Murray v. Carrier, 477 U.S. at 496). Having concluded that 
Dale failed to meet the habeas prejudice standard, we do not 
think he can possibly claim a miscarriage of justice which 
requires "a stronger showing than that needed to establish 
prejudice." Id. We therefore reject this last ditch argument.

 For the foregoing reasons the judgment of the district 
court is

 Affirmed.

__________
D.C. Cir. R. 28(j) (emphasis added).



 Karen LeCraft Henderson, Circuit Judge, concurring:

 I agree with the majority opinion that, having failed to 
object to the judge's materiality determination at any stage of 
his criminal prosecution and having failed to establish in the 
habeas proceeding that he was prejudiced by the determina-
tion, Dale would be procedurally barred from raising the 
Gaudin error--if he were otherwise entitled to its benefit. 
He is not. In Teague v. Lane, 489 U.S. 288 (1989), a plurality 
of the United States Supreme Court declared: "Unless they 
fall within an exception to the general rule, new constitutional 
rules of criminal procedure will not be applicable to those 
cases which have become final before the new rules are 
announced." 489 U.S. at 310. The plurality set out two 
exceptions to the general rule: (1) "a new rule should be 
applied retroactively if it places 'certain kinds of primary, 
private individual conduct beyond the power of the criminal 
law-making authority to proscribe,' " id. at 311 (quoting 
Mackey v. United States, 401 U.S. 667, 693 (1971) (Harlan, J., 
concurring in judgments in part and dissenting in part)); and 
(2) "a new rule should be applied retroactively if it requires 
the observance of 'those procedures that ... are implicit in 
the concept of ordered liberty,' " id. (quoting Mackey, 401 
U.S. at 693) (internal quotation omitted). A majority of the 
Court has since repeatedly applied both the Teague plurali-
ty's retroactivity rule and its two exceptions. See, e.g., Gil-
more v. Taylor, 508 U.S. 333 (1993); Saffle v. Parks, 494 U.S. 
484 (1990); Butler v. McKellar, 494 U.S. 407 (1990); Penry v. 
Lynaugh, 492 U.S. 302 (1989). I believe that Gaudin estab-
lished the kind of new rule of constitutional procedure gov-
erned by Teague and that it fits within neither of the two 
Teague exceptions. I therefore conclude, as did the district 
court, that Gaudin 's holding does not apply retroactively to 
Dale's convictions.

 As a threshold matter, to come under Teague 's retroactivi-
ty regime, an intervening court decision must produce "a new 
constitutional rule of criminal procedure." That the Gaudin 
rule, which derives from a defendant's Fifth and Sixth 
Amendment rights, is a constitutional one cannot be doubted. 
The rule is plainly also one of procedure--it simply dictates 


who must decide the statutory element of materiality--it tells 
us nothing of what constitutes a substantive violation of the 
statute. Cf. United States v. McKie, 73 F.3d 1149, 1151 (D.C. 
Cir. 1996) (court's interpretation of "substantive terms" of 
criminal statute is not "procedural" rule subject to Teague ). 
Moreover, I believe the Gaudin rule was also a "new" rule 
when formulated.

 The Supreme Court acknowledged in Teague that "[i]t is 
admittedly often difficult to determine when a case announces 
a new rule" and it would "not attempt to define the spectrum 
of what may or may not constitute a new rule for retroactivity 
purposes." Teague, 489 U.S. at 301; see also Mackey, 401 
U.S. at 667, 693 (1971) (Harlan, J., concurring in judgment in 
part and dissenting in part) ("[I]n Desist [v. United States, 
394 U.S. 244, 263 (1969) ] I went to some lengths to point out 
the inevitable difficulties that will arise in attempting 'to 
determine whether a particular decision has really announced 
a "new" rule at all or whether it has simply applied a well-
established constitutional principle to govern a case which is 
closely analogous to those which have been previously consid-
ered in the prior case law.' I remain fully cognizant of these 
problems...."). The Teague Court nevertheless offered 
guidance for deciding which rules are "new" ones: "In gener-
al, ... a case announces a new rule when it breaks new 
ground or imposes a new obligation on the States or the 
Federal Government. To put it differently, a case announces 
a new rule if the result was not dictated by precedent existing 
at the time the defendant's conviction became final." Teague, 
489 U.S. at 301 (emphasis original). The Gaudin rule comes 
easily within the latter characterization. Not only was Gau-
din 's holding "not dictated by precedent existing at the 
time," it was contrary to both Supreme Court precedent and 
that of a large majority of the circuit courts of appeal.

 As the Supreme Court noted, the holding in Gaudin was 
inconsistent with its earlier decision in Sinclair v. United 
States, 279 U.S. 263 (1929). In Sinclair the Court had 
rejected a Sixth Amendment challenge to a trial court's 
determination of "pertinency" in a criminal contempt proceed-
ing for violation of 2 U.S.C. s 192, which criminalized refusal 


by a Congressional witness "to answer any question pertinent 
to the question under inquiry." 1 While Sinclair was "not 
controlling in the strictest sense, since it involved the asser-
tion of a Sixth Amendment right to have the jury determine, 
not 'materiality' under s 1001, but rather 'pertinency' under 
[2 U.S.C. s 192]," the Court nonetheless acknowledged that it 
"[could not] hold for respondent ... while still adhering to 
the reasoning and the holding of that case," 515 U.S. at 519-
20. The Gaudin Court was therefore required to "repudiate" 
much of the "reasoning" in Sinclair. Id. at 520. At the same 
time the Court also repudiated the holdings of eleven circuit 
courts of appeal, which had held that materiality was a 
question of law to be decided by the judge. See 515 U.S. at 
527 (Rehnquist, J., concurring) ("Before today, every Court of 
Appeals that has considered the issue, except for the Ninth 
Circuit, has held that the question of materiality is one of 
law.") (citing United States v. Gaudin, 28 F.3d 943, 955 (9th 
Cir. 1994) (Kozinski, J., dissenting) (listing opinions from 
eleven circuits so holding)).2 Given the overwhelming, con-

__________
 1 The statute provided in full:

 "Every person who having been summoned as a witness by the 
 authority of either house of Congress, to give testimony or to 
 produce papers upon any matter under inquiry before either 
 house, or any committee of either house of Congress, willfully 
 makes default, or who, having appeared, refuses to answer any 
 question pertinent to the question under inquiry, shall be 
 deemed guilty of a misdemeanor, punishable by a fine of not 
 more than $1,000 nor less than $100, and imprisonment in a 
 common jail for not less than one month nor more than twelve 
 months."

279 U.S. at 284 (quoting 2 U.S.C. s 192).

 2 The Ninth Circuit dissent cited the following decisions: United 
States v. Corsino, 812 F.2d 26, 31 n.3 (1st Cir. 1987); United States 
v. Bernard, 384 F.2d 915, 916 (2d Cir. 1967); United States v. 
Elkin, 731 F.2d 1005, 1009 (2d Cir. 1984); United States v. Greber, 
760 F.2d 68, 73 (3d Cir. 1985); Nilson Van & Storage Co. v. Marsh, 
755 F.2d 362, 367 (4th Cir. 1985); United States v. Hausmann, 711 
F.2d 615, 616-17 (5th Cir. 1983); United States v. Chandler, 752 
F.2d 1148, 1150-51 (6th Cir. 1985); United States v. Brantley, 786 


trary precedent the Gaudin Court overruled, I must conclude 
that its opinion established a "new" rule which cannot be 
applied retroactively unless it comes within one of the two 
exceptions recognized in Teague and its progeny 3--and the 
Gaudin rule does not.

 Conceding that the first exception does not apply, Dale 
asserts that the Gaudin rule comes within the second excep-
tion as one "requir[ing] the observance of 'those procedures 
that ... are implicit in the concept of ordered liberty.' " 489 
U.S. at 311 (quoting Mackey, 401 U.S. at 693) (internal 
quotation omitted). In this he errs. The second Teague 
exception is reserved "for 'watershed rules of criminal proce-
dure' implicating the fundamental fairness and accuracy of 
the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 495 
(1990) (quoting Teague, 489 U.S. at 311). The Supreme 
Court has "usually cited Gideon v. Wainwright, 372 U.S. 335, 
83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that a defendant 
has the right to be represented by counsel in all criminal 
trials for serious offenses, to illustrate the type of rule coming 
within the exception." Id. The Gaudin rule is not of the 
same type. It "has none of the primacy and centrality of the 
rule adopted in Gideon or other rules which may be thought 
to be within the exception" and, as the majority opinion 
demonstrates, its breach "would not seriously diminish the 
likelihood of obtaining an accurate determination." Butler v. 
McKellar, 494 U.S. 407, 416 (1990). Gaudin 's holding there-
fore is not within the "small core of rules" that implicate the 

__________
F.2d 1322, 1327 & n.2 (7th Cir. 1986); United States v. Hicks, 619 
F.2d 752, 758 (8th Cir. 1980); United States v. Daily, 921 F.2d 994, 
1004 (10th Cir. 1990); United States v. Lopez, 728 F.2d 1359, 1362 
n.4 (11th Cir. 1984); United States v. Hansen, 772 F.2d 940, 950 
(D.C. Cir. 1985). 28 F.3d at 955.

 3 Dale argues that Teague does not prevent retroactive applica-
tion of new rules in collateral challenges to federal (rather than 
state-court) convictions. This court, however, has twice recognized 
Teague 's applicability to federal conviction challenges. See United 
States v. McKie, 73 F.3d 1149, 1150 (D.C. Cir. 1996); United States 
v. Ayala, 894 F.2d 425, 429 n.8. (D.C. Cir. 1990).


second Teague exception. See Graham v. Collins, 506 U.S. 
461, 477 (1993) (quoting Teague, 489 U.S. at 311).

 For the foregoing reasons I believe that the rule announced 
in Gaudin should not be given retroactive effect. Accord 
Bilzerian v. United States, 127 F.3d 237 241 (2d Cir. 1997); 
United States v. Swindall, 107 F.3d 831, 836 (11th Cir. 1997). 
I would therefore affirm the district court on that basis.